## DONALD WAYNE DUNCAN *v.* STATE OF MARYLAND

[No. 83, September Term, 1968.]

*Decided November 20, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Livingston W. Yourtee* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, State's Attorney for Anne Arundel County,* and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant and a co-defendant [1] were jointly indicted for robbery and jointly tried in the Circuit Court for Anne Arundel County by the court without a jury. The appellant was found guilty of robbery (1st count) and malicious mischief [2] proscribed by Md. Code, (1967 Repl. Vol.), Art. 27, § 111 (7th count) and a general sentence of imprisonment for a term of 7 years was imposed. On appeal from the judgment the appellant first contends that the evidence was not sufficient to sustain the conviction of malicious mischief.

The 7th count of the indictment alleged that the appellant "wilfully and maliciously did destroy, injure, deface and molest the personal property of Otto Von Schrader." The evidence showed that the injury was to the car of Von Schrader, stolen by the appellant while he was robbing Von Schrader. [3] The circumstances of the injury, as observed by both the victim and

---

[1]. James Joseph Barringer was convicted of robbery and sentenced to imprisonment for a term of 5 years, subsequently reduced to 4 years by order of the court.

[2]. The crime is so designated by writers in early times and by writers today. Such phrases as malicious destruction of property, malicious trespass, malicious injury and malicious damage are merely additional labels used at times to indicate the same offense.

[3]. The appellant does not contend that the evidence was not sufficient to sustain the conviction of robbery.

a police officer, are not disputed. After robbing Von Schrader of $8 in currency and the keys to his car, the appellant, accompanied by the co-defendant, drove the car from a parking lot. He backed the car out of its parking space "at a high rate of speed, stopped short, went forward, struck a light car that was parked next to it" and drove away.[4] The headlight on Von Schrader's car was broken. The car was pursued by the police who stopped it several blocks away and apprehended the appellant and the co-defendant. The appellant was behind the wheel.

Md. Code, *supra,* Art. 27, § 111 provides: "Any person who shall wilfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor * * *."[5] The elements of the offense under the statute are:

(1) as to the property: it may be real or personal property but must be that of another;
(2) as to the mischief: the property must be destroyed, injured, defaced or molested;
(3) as to the mens-rea: the mischief must be wilful and malicious.

In the instant case the evidence showed that the appellant was the criminal agent and, as to the *corpus delicti,* it showed that

---

4. The appellant testified that he was not "aware" he struck another car.

5. Malicious mischief was a misdemeanor according to the common law of England although there is some confusion as to this because Blackstone said that it was "only a trespass at common law," 4Bl. Comm. 243, and because there were few English precedents of indictments for such an offense at common law. But before the word "misdemeanor" became well established the old writers tended to use the word "trespass" to indicate an offense below the grade of felony, as Blackstone did in the phrase "treason, felony or trespass" in 4Bl. Comm. 130. And from an early day the offense was punished as a felony or misdemeanor by statutes in England, from Westminister I., 13 Edw. 1, § 46 (1275) to 24 and 25 Vict. c. 97 (1861), covering injury to many specific types of property and to property generally. There are American decisions holding that it was a misdemeanor at common law. See e. g. *State v. Watts,* 48 Ark. 56 (1886); *State v. Simpson,* 9 N. C. 460 (1823).

the property was the personal property of another and that the property was injured, defaced and molested. The only question is as to the mens-rea, whether the damage was by a wilful and malicious act.

Blackstone said that malicious mischief "is such as is done, not *animo furandi,* or with an intent of gaining by another's loss * * * but either out of a spirit of wanton cruelty, or black and diabolical revenge." 4B1. Comm. 243. Some cases, following this view, hold that malice as to this offense has a different meaning from that ordinarily used in the law of crimes and is used in the sense of actual ill-will or resentment toward the owner or possessor of the property. 2 *Wharton's Criminal Law,* (1957) § 657, p. 456; *Clark & Marshall, Law of Crimes* (6th Ed.), § 12.43, p. 869. *Perkins, Criminal Law* (1957) ch. 4, § 7C, p. 285 finds this "quite illogical," resulting "from a faulty analysis of the legal meaning of the word 'malice.'" He states, p. 285:

> "'Malice' has had its chief exposition in the homicide cases, and all the confusion at this point could have been avoided if due attention had been given to the results there reached. A homicide may be malicious without a specific intent to kill if it results from an act done in wanton and wilful disregard of a plain and strong likelihood that loss of life will result. On the other hand, an intentional homicide without justification or excuse is not malicious if committed under circumstances of recognized mitigation. And this application of 'malice' to the homicide cases is in no sense an unusual treatment of the word as it is used in the law. In other words, the ordinary legal concept of malice requires two ingredients, one positive and the other negative. On the positive side 'malice' requires an intent to cause the very harm that results or some harm of the same general nature, or an act done in wanton and wilful disregard of the plain and strong likelihood that some such harm will result. And on the negative side it requires the absence of any circumstance of justification, excuse or recognized mitigation."

We think that Maryland tends toward the view expressed in *Perkins*. In *Rosenberg v. State*, 164 Md. 473, 476 the Court, construing a statute then in effect providing that any person who shall "wilfully and maliciously * * * destroy * * * any fencing, * * * shall on conviction thereof, be adjudged guilty of a misdemeanor * * *," said the term "wilfully," for the purposes of such an accusation, "is used to characterize an act done with deliberate intention for which there is no reasonable excuse," and the word "maliciously" is "descriptive of a wrongful act committed deliberately and without legal justification." This definition of malice is in substance the same as that used in connection with murder—"the intentional doing of a wrongful act to another without legal excuse or justification." *Chisley v. State*, 202 Md. 87, 105. And we see no practical distinction between "wilful" and "malicious" as used in the statute proscribing malicious mischief, as malice "includes any wrongful act done wilfully or purposely." *Chisley v. State, supra*, p. 105, citing *Rosenberg v. State, supra*. We think that the special element of mens-rea in malicious mischief, designated in the statute as "wilfully and maliciously," requires either a specific intent to cause the destruction, injury, defacement or molestation of the property of another, or an act done in wanton and wilful disregard of the plain and strong likelihood of such harm, without any justification, excuse, or substantial mitigation. Stated in other words: the mens-rea requirement of malicious mischief is a property-endangering state of mind, without justification, excuse, or mitigation. *Perkins, supra*, p. 290.

The few cases in this jurisdiction on point, support this view. In *Rosenberg v. State, supra*, the Court found that in removing a post standing on another's property, Rosenberg was asserting a property right which the owners of the ground on which the post was planted were contesting. Thus the mischief was done with justification or excuse or mitigation and did not constitute the criminal offense proscribed by statute. In *Gibson v. State*, 238 Md. 414, the parties involved were feuding over a roadway and Mr. and Mrs. Gibson twice cut a fence situated on property belonging to Strauss. The fence in no way impaired the use of the roadway nor did it touch or intrude on the Gibson property. Thus there was no justification or excuse

or mitigation for the mischief and it did constitute the offense. But while these cases related to the mens-rea of the offense they are of little help in a determination of the instant case. In both *Rosenberg* and *Gibson* the decisions turned on justification, excuse or mitigation; there was no question but that the acts were done wilfully and purposely. On the other hand, in the instant case we have no difficulty in finding that there was no justification, excuse or mitigation, in the sense required, in the act causing the damage to the car, and the question is whether it was wilful and purposeful. The appellant argues, in effect, that the damage was caused accidentally and even if by his negligence, "regardless of whether he was stealing the car, borrowing it or using it without authority," this is not sufficient to show the required mens-rea.

We do not think that the evidence before the lower court was sufficient to show that the appellant had a specific intent to damage the car; rather it appears that he took the car as a means of escape. But it is established that malice may be inferred from the circumstances. *Chisley v. State, supra,* p. 105; *Wharton, supra,* § 657, p. 458. The lower court said, "I think that by inference * * * malice was shown here." As we have found that there was no justification, excuse, or mitigation in the act causing the damage to the car, the question is, therefore, whether such act was done in wanton and wilful disregard of the plain and strong likelihood of such damage. The cases precisely on point in other jurisdictions are few in number. Two are illustrative. In *State v. Robinson,* 20 N. C. 130 (1838) the defendants found a wagon standing in the street and ran it through the street and down a hill, whereby it was damaged. The court found that this was not malicious mischief. But it based its decision on the rule that malicious mischief to be indictable "consists in the wilful destruction of some article of personal property, from actual ill-will or resentment towards its owner or possessor," p. 131. We have rejected this rule. In *State v. Davis,* 88 S. C. 229 (1911) the lower court charged the jury as to malicious mischief that "if the proof in this case satisfies you beyond a reasonable doubt that these defendants, on the occasion referred to, drove that automobile (taken without the consent of the owner) down that public road in such a furious

manner, so regardless of the rights of the owner of it as not to know and not to care whether they smashed it up, and while so recklessly driving it was wrecked and broken up, the law says they are presumed as intending to smash it up, because that is the reasonable consequence of their act, and if you are satisfied beyond a reasonable doubt that these facts existed, then they are guilty of the crime of malicious mischief." The South Carolina Supreme Court held that the charge was proper, saying that "malice is a term of art, implying wickedness and excluding a just cause or excuse. It is implied from an unlawful act wilfully done * * *. In an indictment for malicious mischief it is not necessary to show personal ill-will against the owner of the property, but malice as an ingredient of the offense may be inferred from the wilful doing of an unlawful act without just cause or excuse, and both wilfulness and malice may be inferred when the unlawful act is done in such a wanton and reckless spirit as to show a mind disposed to mischief." 88 S. C. 238-239.

We do not think, in the instant case, that the evidence was sufficient to support an inference of malice. The evidence, with regard to the damage to the car, showed only that the appellant backed the car out of its space on the parking lot "at a high rate of speed, stopped short, went forward," struck a car parked next to it and drove away. We cannot say that this evidence properly permitted the lower court to find that the appellant drove the car in such a reckless manner, so regardless of the rights of the owner as not to know and not to care whether he damaged it, so as to raise the inference that he intended to damage it as the reasonable consequence of his act. Even though his actions may have been negligent, this is not enough.[6] We feel that the evidence here was not sufficient to

---

6. "(Simple) negligence, whether in commission or omission, is not enough to render a man guilty of a crime of which a specific intent is an essential element, as in the case of * * * malicious mischief * * *. Criminal liability cannot be supported by mere negligence, it must reach the level of recklessness, wantoness and be of such character manifesting an utter disregard of the safety of others." *Clark and Marshall, supra,* § 5.09, pp. 264-265. So gross negligence—a wanton and reckless disregard for human life—may

show gross negligence or to support an inference that the act of the appellant was done in wanton and wilful disregard of the plain and strong likelihood of the damage which ensued. Thus the mens-rea requirement of the crime of malicious mischief proscribed by the statute was not met. Therefore the judgment of the lower court on the evidence was clearly erroneous and must be set aside as to the 7th count of the indictment. Md. Rules, 1086. As the general sentence imposed was within the maximum authorized for the crime of robbery of which the appellant was convicted under the 1st count, the sentence need not be disturbed. *Burks v. State,* 1 Md. App. 81; *Jones v. State,* 3 Md. App. 608.

The appellant also contends that the lower court erred in limiting cross-examination by him of a State's witness relating to the condition of the victim, Von Schrader. On direct examination of a police officer called by the State, in answer to a question, "Can you tell us Mr. Von Schrader's condition at the time you first observed him?" The witness replied, "I could see blood on Mr. Von Schrader's face." On cross-examination defense counsel asked, "And you observed the blood on his face, you said?" And the witness replied, "Yes, sir." Counsel then asked, "Did you observe anything else unusual about Mr. Von Schrader's condition?" Objection to the question was made and overruled and the witness answered, "No, sir, I did not." Counsel asked, "Could you detect any odors?" Objection was made and sustained and the witness was excused. Ordinarily the scope of cross-examination is a matter within the sound discretion of the trial judge and will not be disturbed on appeal unless it appears that some injustice has been done. *Barger v. State,* 2 Md. App. 565, *Davis and Peterson v. State,*

support an inference of malice and place homicide in the category of murder and a wanton and reckless act may be sufficient for guilt in other offenses having malice as an essential element. That a person causing the death of another as the result of driving an automobile or other vehicle in a grossly negligent manner is guilty only of manslaughter is not because malice cannot be inferred but because the statute designates the offense as manslaughter by automobile or other vehicle. Md. Code, Art. 27, § 388. The statute creates a separate statutory misdemeanor. *Connor v. State,* 225 Md. 543.

1 Md. App. 581. We see no injustice or prejudice here. It is true that where a general subject has been entered upon in the examination in chief, the cross-examining counsel may ask any relevant question on the general subject. *Williams v. Graff,* 194 Md. 516, 522, quoted in *Shupe v. State,* 238 Md. 307, 311. But here the trial judge allowed a question as to the condition of Von Schrader and the witness replied that he observed nothing unusual about Von Schrader's condition except the blood on his face. The appellant now says that by excluding the question about odors, he was "hampered" from showing "that Von Schrader may have been drunk, thus impeaching his testimony and giving greater credibility to the appellant's own testimony." But the relevance of the excluded question was not apparent, it made no reference to what kind of "odors" or that it was the odor of alcohol to which the inquiry was directed. Nor did counsel attempt to pursue the matter; he could have elicited testimony as to the intoxication of Von Schrader *vel non,* had he so desired, by questions properly framed. We find no error in the exclusion of the challenged question.

> *Judgment affirmed on the robbery conviction (1st count); judgment reversed on the malicious mischief conviction (7th count) and remanded for a new trial thereon.*