STATE of North Dakota, Plaintiff
and Appellee,

v.

Harold CHYLE, Defendant
and Appellant.

Cr. No. 716.

Supreme Court of North Dakota.

Oct. 6, 1980.

F. C. Rohrich, State's Atty., Linton, for plaintiff and appellee State of North Dakota.

Frank J. Wikenheiser, of Wheeler, Wolf, Wefald, Peterson & McDonald, Linton, for defendant and appellant.

VANDE WALLE, Justice.

Harold Chyle appeals from a conviction of criminal mischief by a jury in the district court in Emmons County on February 28, 1980.

Before discussing and deciding the merits of Chyle's appeal it is necessary to decide the State's motion to dismiss this appeal.

On August 21, 1980, the State, under North Dakota Rule of Appellate Procedure 27, filed with this court a motion to dismiss Chyle's appeal. As its ground for dismissal the State alleges that Chyle failed to give notice of appeal within 10 days of entry of judgment as provided by North Dakota Rule of Appellate Procedure 4(b).[1]

The record shows that the original judgment and order deferring imposition of sentence in this case was filed on February 29, 1980. An amended criminal judgment and order deferring imposition of sentence was filed on March 5, 1980. On March 14, 1980, Chyle filed a notice of appeal "from the judgment of the above named Court entered on March 5, 1980, . . ." This notice of appeal was filed 14 days after the original criminal judgment and nine days after the amended criminal judgment was filed.

In support of its motion to dismiss, the State relies on *State v. Lesmeister*, 293 N.W.2d 875 (N.D.1980). *Lesmeister*, however, dealt with an issue which is not present in the current motion. In *Lesmeister*, the appellant argued that because there was no proof he had received notice of entry of the judgment, as provided by Rule 49(c), North Dakota Rules of Criminal Procedure, the 10 days within which to file a notice of appeal should not have begun to run, and insisted that his appeal should be heard even though it was filed 16 months after judgment. In *Lesmeister* we quoted directly from Rule 49(c), N.D.R.Crim.P., that:

" . . . Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by Rule 37(b) of these rules and Rule 4(b) of the N.D.R.App.P."

We then found that the appellant had provided no justification for concluding that there was an exception applicable to his appeal to be found in Rule 37(b) of the North Dakota Rules of Criminal Procedure[2] or Rule 4(b) of the North Dakota Rules of Appellate Procedure. *State v. Lesmeister, supra*, 293 N.W.2d at 876.

In the present case, Chyle does not claim that he is entitled to any exception for an extension of the time for appeal. He claims only that the 10-day notice of appeal time limit should not begin to run from the time the original judgment was filed, February 29, 1980, but rather from the time the amended judgment was filed, March 5, 1980.

While the original judgment did not address the issue of restitution, the amended judgment filed on March 5, 1980, con-

1. Rule 4(b), N.D.R.App.P., provides, in part:
    "(b) *Appeals in Criminal Cases.* In a criminal case the notice of appeal by a defendant shall be filed with the clerk of the trial court within 10 days after the entry of the judgment or order appealed from."

2. Rule 37(b), N.D.R.Crim.P., provides, in part:
    "The notice of appeal by a defendant shall be filed with the clerk of the trial court within 10 days after the entry of the judgment or order appealed from."

tained a provision relating to restitution as authorized by Section 12.1–32–07(2)(e), N.D. C.C. A provision for restitution in a sentence to probation should, where appropriate, be encouraged and we do not criticize the trial court for including the provision in an amended judgment.

■ In light of the fact that the amended judgment in this case did not go to the essence of Chyle's conviction, it would appear that he may have been the beneficiary of several extra days in which to decide whether or not to file an appeal. However, to strictly interpret Rule 4(b), N.D.R. App.P., and its counterpart, Rule 37(b), N.D.R.Crim.P., as applying to an original judgment, rather than a final judgment, could have the effect of working an injustice on a potential appellant where the subsequent amended judgment proved particularly onerous or came at a time beyond 10 days after the original judgment had been filed. These possibilities, linked with the fact that Chyle specifically stated that he was appealing "from the judgment of the above named Court entered on March 5, 1980, . . ." lead us to deny the State's motion to dismiss the appeal.

## FACTS AND ISSUES

On October 30, 1979, Chyle was charged with criminal mischief in violation of Section 12.1–21–05(2)(a), N.D.C.C. On December 6, 1979, the State moved to amend its complaint to reduce the charge to a Class A misdemeanor under Section 12.1-21-05(2)(b).[3] The evidence introduced during the trial showed that on the night of October 24, 1979, Chyle and two companions, Ronald Herr and Alfred Gross, met in Linton, North Dakota, and later went driving in Herr's car. Between 12 midnight and 12:30 a. m. the trio stopped at Holzer's gas station so that Herr could use the restroom. After Herr stopped his car at the gas station and while he was walking away, Chyle slid over to the driver's seat. Gross testified that Chyle drove the car to the parking lot of the T & R Warehouse, a retail grocery store located adjacent to the gas station, and did a "cookie" in the parking lot. When asked to explain, Gross responded: "Well, he drove towards the Warehouse and stepped on it and turned towards the highway and did a complete U--turn and came back again." Gross also testified that he heard the wheels spinning and "heard gravel" while Chyle was performing this "cookie." On cross-examination Gross testified that he was never sure just how close the car came to the T & R Warehouse. Herr also testified, but indicated he heard neither spinning tires nor flying rocks as Chyle was driving Herr's car. Neither Gross nor Herr was aware of any broken glass on the store front of T & R Warehouse that night.

Chyle testified in his own behalf and gave an account of his driving Herr's car which directly contradicted the testimony of Gross.

Upon arriving for work on the morning of October 25, 1979, Ron Schumacher, co-owner of the T & R Warehouse, noticed rocks strewn about the concrete portion of the store's parking lot. This portion extends 25 feet from the store to where the graveled portion begins. Schumacher also noticed that five of the large windows on the front of the store facing the parking lot had holes in them and that the remaining two windows were chipped. The State later produced undisputed evidence that damage had been done to the windows and that the damage amounted to $3,294.

---

**3.** *Section 12.1–21–05, N.D.C.C., provides:*

"1. A person is guilty of an offense if he:
 "a. Willfully tampers with tangible property of another so as to endanger person or property; or
 "b. Willfully damages tangible property of another.
"2. The offense is:
 "a. A class C felony if the actor intentionally causes pecuniary loss in excess of two thousand dollars or damages tangible property of another by means of an explosive or a destructive device.
 "b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of two thousand dollars or if the actor intentionally causes pecuniary loss of from one hundred through two thousand dollars.
"Otherwise the offense is a class B misdemeanor."

At the close of the State's case the defense moved for judgment of acquittal under Rule 29 of the North Dakota Rules of Criminal Procedure. This motion was denied. At that time the trial judge asked if there were any objections to the jury instructions. There were no objections.

Before submitting the matter to the jury the trial judge defined for it "criminal mischief" under Section 12.1–21–05(2)(b), N.D. C.C. The jury was told:

> "A person is guilty of an offense if he:
> "Willfully damages personal property of another.
> "The offense is:
> "b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of two thousand dollars . . .
> "A person engages in conduct 'willfully' if he engages in the conduct—recklessly.
> " 'Recklessly' is defined as conduct engaged in in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct."

Following this definition, the trial court further elaborated with regard to "mental state":

> "The intent or purpose with which an act is done is a mental process and as such generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be proved, with which it is charged to be connected. It is presumed, however, that an unlawful act was done with an unlawful intent."

Chyle raises three issues on appeal:

1. Did the district court err when it denied Chyle's motion for judgment of acquittal on the ground that the evidence was insufficient to support a conviction?

2. Did the district court err when it instructed the jury: "It is presumed, however, that an unlawful act was done with an unlawful intent"?

3. Did the above–mentioned instruction amount to obvious error reviewable under Rule 52(b), N.D.R.Crim.P., even though no objection was made to the instruction at trial?

I

This court's position on the sufficiency of evidence to sustain a conviction by a jury if challenged on appeal was recently restated in *State v. Bartkowski*, 290 N.W.2d 218, 220 (N.D.1980), where we referred to *State v. Moe*, 151 N.W.2d 310 (N.D.1967), which held that in determining whether or not the evidence is sufficient to support a jury verdict the evidence must be viewed in the light most favorable to the verdict.

In his motion for judgment of acquittal Chyle contended that the State had failed to produce evidence sufficient to sustain a conviction. Chyle argued that there had been no connection established between him and any of the acts involved in the breaking of the windows at the T & R Warehouse. He further argued that no evidence had established that he was driving the car on the night in question and that even if that had been established, there was no proof that his manner of driving caused the glass to break.

In *State v. Olmstead*, 246 N.W.2d 888 (N.D.1976), this court reviewed its function on appeal where a defendant alleges insufficiency of the evidence to support a verdict of guilty. That review included a variety of descriptions the court had used in deciding whether or not to reverse factual findings of juries or trial judges. The review concluded with the statement:

> "However stated, these rules indicate a recognition that the truth can better be determined in the confrontation of the testimony of witnesses appearing in person than from a transcript of the testimony of those witnesses." 246 N.W.2d at 890.

See also *State v. Olson*, 290 N.W.2d 664 (N.D.1980).

Chyle argues that the evidence used to convict him of criminal mischief was circumstantial and conflicting. He points particularly to the testimony of Gross, who was a passenger in the car while Chyle was driving. Gross testified that Chyle did a "cookie" with Herr's car in the parking lot of T & R Warehouse and also that, while he heard the wheels spinning and "heard gravel," he had no knowledge of the broken windows until four days after the incident. Chyle later testified that he did not do a "cookie" with Herr's car nor did he even accelerate the car. Chyle contends that the circumstantial and conflicting evidence brought forth at trial does not pass the test for a conviction on circumstantial evidence restated by this court in *State v. Allen*, 237 N.W.2d 154 (N.D.1975). That long-standing test was originally adopted in *State v. Carroll*, 123 N.W.2d 659 (N.D.1963), where this court relied on a rule announced in 24A C.J.S. *Criminal Law* § 1882, beginning at page 826, as follows:

> "While a case based on circumstantial evidence should be scanned with caution, the fact that the evidence is circumstantial and conflicting does not alone empower the appellate court to weigh it or determine its sufficiency, if it reasonably tends to prove the guilt of accused and fairly warrants a conviction. The question is whether there is evidence to support the verdict; and a verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts, and will not be disturbed unless wholly unwarranted, even though the evidence is weak and unsatisfactory to the appellate court. The reviewing court is not required to explain the process by which the jury arrived at their determination."

See also *State v. McMorrow*, 286 N.W.2d 284 (N.D.1979); *State v. Rieger*, 281 N.W.2d 252 (N.D.1979).

The different perspectives held by the trial court and this court regarding the evaluation of circumstantial evidence has been made clear:

> "At the trial court level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but on the appellate court level the role of the Supreme Court is to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Olson*, 290 N.W.2d 664, 671 (N.D.1980).

See also *State v. McMorrow, supra; State v. Allen, supra.*

With the standard of review regarding the sufficiency of circumstantial evidence clearly stated, we may now turn to the record and, applying this standard, quickly dispose of Chyle's first challenge to his conviction.

The jury heard Gross describe the manner in which Chyle drove Herr's car to the parking lot of the T & R Warehouse on the evening in question:

"Q. Then what happened, if anything?

"A. Well, Ron Heer [Herr] got out of the car—I am not sure what it was for, but he got outside of his car and right after he got out of his car and walked off, then Harold Chyle got behind the wheel and took off down towards the T & R Warehouse.

"Q. Now as he was taking off towards the T & R Warehouse, he was increasing his speed?

.        .        .        .        .

"A. Well, yes.

"Q. And then in front of the T & R Warehouse, what happened, if anything?

"A. He did a cookie.

"Q. Would you explain that to the Court and the jury.

"A. Well, he drove towards the Warehouse and stepped on it and turned towards the highway and did a complete U-turn and came back again.

"Q. As he turned around, did he accelerate?

"A. Yes.

"Q. Did you hear the gravel flying?

"A. I heard the wheels spinning and I heard gravel."

Chyle's testimony regarding the driving incident was markedly different:

"Q. Did you then drive this vehicle in question?

"A. Yes, I did.

.  .  .  .  .

"Q. Did you at any time approach the T & R Warehouse approach?

"A. No, I didn't.

.  .  .  .  .

"Q. Did you at any time accelerate the car when you were driving it?

"A. No, I didn't."

On cross–examination Chyle was asked:

"Q. Now what about this cookie, did you make a cookie there that night?

"A. No, I didn't.

"Q. You never spun around in this car at all?

"A. No." [4]

■ We find that there was competent evidence at the trial and in the record as a whole which allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting the conviction.

In addition to challenging the sufficiency of the evidence regarding the physical manner in which he drove the car, Chyle also contends that the State did not produce sufficient evidence regarding the required mental state for a criminal conviction. Under Section 12.1–21–05(2)(b), N.D.C.C., the section under which Chyle was charged, the required mental state for conviction is recklessness.[5]

In arguing insufficiency of evidence to prove recklessness, Chyle relies heavily on *Duncan v. State*, 5 Md.App. 440, 248 A.2d 176 (1968). Chyle contends that his behavior while driving Herr's car evidenced the same mental state as that in *Duncan*. In that case, Duncan, after robbing his victim and taking the victim's car, backed the car out of its spot in a parking lot at a high rate of speed, stopped short, went forward, struck a light car that was parked next to it, and drove away. Duncan was subsequently convicted of robbery and malicious mischief. He appealed the malicious mischief conviction on the ground that there had not been sufficient evidence regarding the required mens rea presented at trial to sustain the conviction. The Court of Special Appeals of Maryland agreed with Duncan and reversed the conviction for criminal mischief. The statute under which Duncan was convicted required that property be damaged in a willful and malicious manner.[6] The court concluded that the statutory mens rea "willfully and maliciously" required either specific intent (which it immediately ruled was not applicable in the case before it) or that the act be "done in wanton and willful disregard of the plain and strong likelihood of such harm without any justification, excuse, or substantial mitigation." 248 A.2d at 179. Although the court in *Duncan* rejected a long-standing requirement that the prosecution must prove actual ill will or resentment toward the owner or possessor of the damaged property to sustain a conviction of a criminal act

---

**4.** It appears that Chyle may be confusing a challenge to the sufficiency of the evidence with a challenge to the credibility of the witnesses. Regarding witness credibility, this court has recognized that "reading a cold transcript is no substitute for hearing and observing witnesses as they testify. Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges." *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976). In light of this we leave the determination regarding the conflicting evidence and the credibility of witnesses in its proper place, the jury room.

**5.** Section 12.1–02–02, N.D.C.C., on requirements of culpability provides, in part, that a person engages in conduct:

"c. 'Recklessly' if he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct . . ."

**6.** Md.Code (1967 Repl. Vol.), Art. 27, § 111, provides:

"Any person who shall willfully and maliciously destroy, injure, deface or molest any real or personal property of another shall be deemed guilty of a misdemeanor . . . ."

which included malice as an element, it nonetheless required proof of wantonness and willfulness. 248 A.2d at 178.

The predecessor of North Dakota's current criminal–mischief statute, Section 12.-1–21–05, N.D.C.C., was Section 12–41--10.[7] The old section, entitled "Malicious mischief," was read to include malice as an essential ingredient of the offense. *State v. Minor*, 17 N.D. 454, 117 N.W. 528 (1908). The word "maliciously," as used in the old section, had a restricted meaning, differing from that given to it generally in criminal statutes. The statute was construed to import a wish or desire to vex, annoy, and injure the owner or possessor of the property. 117 N.W. at 528. Thus the old definition of "malice," which was done away with judicially in *Duncan*, was deleted legislatively in North Dakota when "Malicious mischief" [Section 12–41–10, N.D.C.C.] was replaced by "Criminal mischief" [Section 12.1–21–05, N.D.C.C.].

A comparison of the judicially defined term "malice," which appears in *Duncan*, with the legislatively defined term "recklessly," found in Section 12.1-02 02(1)(c), reveals no substantive difference. The Maryland court in *Duncan* required that the act be "done in wanton and willful disregard of the plain and strong likelihood of such harm without any justification."[8] Section 12.1–02–02(1)(c) requires, for conviction, that the defendant engaged "in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from the acceptable standards of conduct, . . . ."

It would therefore appear that the same mental state was required in *Duncan* as is required by Section 12.1–21–05(2)(b), N.D.C.C., the statute under which Chyle was convicted. However, while that may be the case, the factual differences surrounding Duncan's driving as compared to Chyle's driving preclude us from construing "recklessly" under Section 12.1–02–02 as narrowly as the *Duncan* court construed "maliciously" under the Maryland statute. Chyle would have us equate his "cookie" in the parking lot of the T & R Warehouse with Duncan's maneuvers in the parking lot which he was attempting to leave. One need only observe traffic in any parking lot for a short time to determine that, while probably reflecting negligence, driving techniques such as those exhibited by Duncan are not rare. On the other hand, it is fortunately not so common a thing to observe someone get behind the wheel of a car, accelerate through a parking lot covered with loose gravel, make an abrupt U–turn and head back to the starting point. Duncan's purpose was to leave the parking lot after committing a wrongful act. Chyle's purpose was to enter the parking lot and use it as part of his wrongful act.

## II

The presumption enunciated in Section 31 11 03(2), N.D.C.C., that an unlawful act was done with an unlawful intent, has been incorporated into the jury instruction found in North Dakota Jury Instruction 1313.[9] At the close of Chyle's trial the

---

7. Section 12–41–10, N.D.C.C. [repealed by 1965 N.D.Sess.Laws Ch. 106, § 2; 1973 N.D.Sess. Laws Ch. 116, § 41], stated, in part:

   " 'Malicious mischief' defined—Misdemeanor.—Every person who maliciously injures, defaces, or destroys any real or personal property not his own, in cases other than such as are specified in this chapter, is guilty of a misdemeanor . . . "

8. The court in *Duncan v. State*, 5 Md.App. 440, 248 A.2d 176 (1968), does not define "wanton." However, as defined in Black's Law Dictionary, rev. 4th ed., a "wanton act" is "one done in reckless disregard of the rights of others, evinc-

ing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another, is more than negligence, more than gross negligence, and is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action, equivalent in its results to willful *misconduct*."

9. The instruction on "intent" found in NDJI 1313 is as follows:

   "The intent or purpose with which an act is done is a mental process and as such generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible

district court included this particular instruction in its charge to the jury. At no time during the trial were objections to the jury instructions made by either Chyle or the State. Chyle now contends that the instruction on the presumption regarding intent constituted reversible error. In his contention Chyle relies almost entirely on *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

Chyle points out that in *Sandstrom v. Montana, supra*, the Supreme Court held that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates the Due Process Clause of the Fourteenth Amendment. He then reminds us that the district court in the instant case instructed the jury that "it is presumed, however, that an unlawful act was done with an unlawful intent." Chyle then asks whether or not the district court in this case erred just as the trial court in *Sandstrom* did. We think not.

There is little need here to embark upon a detailed analysis of the facts of *Sandstrom* as compared to those in the case before us.[10] It will suffice to know that the defendant in *Sandstrom* was charged with deliberate homicide.[11] *Sandstrom v. Montana* unquestionably dealt with a presumption which was essentially identical to the one at issue

in the instant case. However, Justice Brennan's opening statement in the Supreme Court's opinion clearly points out the difference between the two cases. In phrasing the issue before that court Justice Brennan stated:

"The question presented is whether, *in a case in which intent is an element*, the jury instruction, "The law presumes that a person intends the ordinary consequences of his voluntary acts," violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." [Emphasis added.] *Sandstrom, supra*, 442 U.S. at 512, 99 S.Ct. at 2453, 61 L.Ed.2d at 43.

The offense for which Chyle was being prosecuted did not include intent as an element. The requisite mental state for conviction under Section 12.1 21 05(2)(b), N.D. C.C., was recklessness.[12] The district court, in giving its instructions to the jury, included detailed instructions regarding the burden of proof which the State had to bear regarding all elements of the crime charged. The court also explained to the jury what it must find in order to conclude that Chyle acted recklessly. The worst that can be said about the district court's instruction on the presumption of intent is that it was superfluous. In *Sandstrom*, the

---

of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be proved, with which it is charged to be connected. It is presumed, however, that an unlawful act was done with an unlawful intent."

10. Nor is there any need here to categorize and discuss in detail the nature and potential effect of presumptions as evidentiary devices in criminal prosecutions. A thorough review of this topic may be conducted with reference to *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); and *Adams v. State*, 92 Wis.2d 875, 289 N.W.2d 318 (1979), *review granted* 95 Wis.2d 529, 290 N.W.2d 872 (1979).

11. 1947 Mont.Rev.Codes Ann. § 94 5 102 (Crim.Code of 1973), provides:

"*Deliberate Homicide.*

"(1) Except as provided in § 94 5 103(1)(a), criminal homicide constitutes deliberate homicide if:

"(a) It is committed purposely or knowingly; . . ."

12. The issue is not before us and we therefore do not decide whether or not the instruction "that an unlawful act was done with an unlawful intent," given without further clarification in a prosecution for a crime in which intent is an element, would fail as did the instruction in *Sandstrom*. However, such a bare instruction, given by a court without pointing out to a jury that it has a choice or that it might infer unlawful intent, may run afoul of the Due Process requirement as stated in *In re Windship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the State prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged.

unconstitutional jury instruction embraced an element of the crime for which the defendant was being tried. In the present case, the jury instruction at issue deals with no element of the crime with which Chyle was charged and, as such, constituted surplusage.

Chyle argues that this court should see as identical the situation in this case and that in *Sandstrom*. In this vein he contends that even though intent was not an element of the crime with which he was charged, this case falls clearly within the reach of *Sandstrom*. To support this contention, Chyle points out that the Supreme Court in *Sandstrom* rejected the State's argument that because the jury was instructed that the crime could be committed "purposely and knowingly," the jurors could have interpreted the presumption on intent as referring only to the defendant's purpose and not his knowledge. The State had reasoned that a jury which convicted the defendant solely for his knowledge would not have found a need to rely on the tainted presumption. 442 U.S. at 525, 99 S.Ct. at 2460, 61 L.Ed.2d at 52. The Supreme Court, in rejecting this argument, noted that even if the jury had been able to ignore the presumption and found the defendant guilty because he acted knowingly, there was no way to be certain that it did so. The Court went on to point out that it had long been settled that when a case is submitted to a jury on alternative theories, the unconstitutionality of any of the theories requires that the conviction be set aside. 442 U.S. at 525, 99 S.Ct. at 2460, 61 L.Ed.2d at 52.

Within Chyle's own argument lies a clear distinction between the issue in *Sandstrom* and the issue in the present case. Chyle's case was not presented to the jury on alternative theories with the mental state of intent encompassing both theories. As the Supreme Court noted in *United States v. United States Gypsum Co.*, 438 U.S. 422, 445, 98 S.Ct. 2864, 2877, 57 L.Ed.2d 854, 874 (1978):

"The element of intent in the criminal law has traditionally been viewed as a bifurcated concept embracing either the specific requirement of purpose or the more general one of knowledge or awareness."

Chyle's case was presented to the jury on one theory, recklessness. A jury instruction on a mental state not an element of the crime charged does not bring Chyle's case within the scope of *Sandstrom*.

### III

Our finding that the jury instruction on "intent" given by the district court did not violate the constitutional rights of Chyle eliminates the need to address the final issue raised by him. In that contention Chyle argued that the giving of an unconstitutional jury instruction on the essential element of a defendant's mental state amounts to obvious error which this court should consider under Rule 52(b), North Dakota Rules of Criminal Procedure, even though the defendant did not object to the instruction at trial.[13] If the instruction on "intent" to which Chyle now objects had been given in a situation more closely akin to *Sandstrom v. Montana, supra,* we might agree that a substantial right may have been affected and that, if so, Rule 52(b), N.D.R.Crim.P., would apply. Since the instruction given in Chyle's case did not fall within the scope of *Sandstrom* we need not decide this issue now.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

13. Rule 52(b), N.D.R.Crim.P., provides:
   "(b) *Obvious Error.*
   "Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."