STATE of North Dakota, Plaintiff and Appellee,

v.

Peter E. MARINUCCI, Defendant and Appellant.

Cr. No. 823.

Supreme Court of North Dakota.

July 1, 1982.

Jonathan R. Fay, Asst. State's Atty., Fargo, for plaintiff and appellee.

Gray & Lochow, Fargo, argued by Michael R. Lochow, Fargo, for defendant and appellant.

SAND, Justice.

This is an appeal by the defendant, Peter E. Marinucci [Marinucci], from a county court with increased jurisdiction judgment of conviction for criminal coercion entered after a jury verdict and from the sentence imposed. Marinucci was sentenced to the Cass County jail for nine months with all but ten days suspended, fined $400.00, and assessed $600.00 in court costs.

On 2 September 1981 Marinucci was employed by Steiger Tractor, Inc., of Fargo, North Dakota, as a maintenance mechanic. On that date the employees of Steiger Tractor were on strike and there were a number of picket lines at entrances to the Steiger plant. At approximately 4:00 p. m., Henry Deyoung [Deyoung] an over-the-road trucker for Diamond Transportation arrived at the Steiger plant to pick up a tractor to transport to Walla Walla, Washington. Deyoung drove through the picket line and entered the Steiger plant where a tractor was loaded on his truck. Deyoung left the Steiger plant and traveled west on Highway 10. Deyoung testified that approximately one mile west of the Highway 10-Interstate 29 junction he noticed a brown jeep pull up alongside his truck. Deyoung saw only one person in the jeep and later identified that person as Marinucci. At this point, Marinucci, in effect, asked Deyoung if the truck belonged to him and if he wanted anything to happen to the truck. Deyoung replied that he did not.

Deyoung eventually stopped at a gas station in West Fargo to refuel his truck. Marinucci pulled into the same truck stop and approached Deyoung. At the truck stop a conversation ensued between Marinucci and Deyoung. This conversation was to the effect that it was possible something would happen to Deyoung's truck if Deyoung did not return the Steiger tractor to the plant. Deyoung testified as follows concerning the conversation with Marinucci:

"Q. ... Were you in any way frightened or placed in any fear by comments and insinuations of Mr. Marinucci?

"A. Yes. That's why I took, that's why I took it [the Steiger tractor] back. I didn't know if somebody else was there or not.

.  .  .  .  .

"Q. From the comments and insinuations of Mr. Marinucci what were you afraid of, sir?

"A. Well, I was afraid of getting a tire cut or hole put in the radiator or something like that or hoses cut and they don't give them away and there's no insurance for vandalism. I don't have no insurance on there for that."

As a result of Deyoung's conversation with Marinucci, a phone call to the Diamond Transportation dispatcher, Ned Azarian, was made. Both Deyoung and Marinucci talked to Azarian. Azarian testified as follows concerning his phone conversation with Deyoung and Marinucci:

"A. When Henry called me he stated to me that he just picked up the load at the Steiger plant and that the strikers told him that he had better go back and I said to him, 'Henry, answer me yes or no only, are they close by you?' And he said, 'Yes.' And I said, 'Do you feel physically threatened?' And he said, 'Yes.' I said, 'Do you think any damage may occur?' And he said, 'Yes, it can.' And I said 'Well,' I said, 'do you think we can talk to this guy, maybe try and persuade him that it is all right to let you go and it's already out of the plant,' and then he eventually put the man on the phone.

.  .  .  .  .

"Q. What did that person [Marinucci] indicate?

"A. He started off with saying that they were on strike, 'Got a bunch of angry guys out here and I don't know if I can handle them all. Something could happen to your truck, trailer, don't forget we're an international union. We're all throughout the United States, your trucks go out all over. We can tell them about it, that you're crossing the picket line.'

.  .  .  .  .

"A. Then I got Henry back on the phone and I said, 'Henry, are there a lot of them around you?' And he said, 'No.' And I said, 'You know, it's up to, your decision, you know, if you feel like you can hop in the truck and take off, you know, if, you know, you feel you could do it maybe you better try it but if you at all feel frightened whatsoever you turn that truck around and go right back.'

"Q. Did Mr. Deyoung indicate what he was going to do?

"A. Yes. He felt, 'I feel threatened enough that I, I'm going to go back.' "

As a result of these conversations, Deyoung returned the Steiger tractor to the Steiger plant.

Marinucci was charged with criminal coercion in violation of North Dakota Century Code § 12.1–17–06, and after a jury trial he was found guilty. He was sentenced to nine months in the Cass County jail with all but ten days suspended, fined $400.00 and assessed $600.00 in court costs. Marinucci appealed to this Court.

The first issue raised by Marinucci is that he was denied due process of law because the trial court refused to give a requested jury instruction to the effect that his conduct as a striking employee in following Deyoung from the Steiger plant was not illegal and could not be restrained by the courts. See NDCC § 34–08–05(5). The instruction requested by Marinucci provided as follows:

"ACTS NOT TO BE RESTRAINED

"That the Defendant, Peter E. Marinucci, could not be restrained from giving publicity to the existence of, or of the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence."

Marinucci asserted that the instruction was necessary because of statements made by the prosecutor in his opening statement and examination of witnesses which attributed illegality to his conduct which was in fact specifically permitted by statute. Specifically, Marinucci cites the portion of the prosecutor's opening statement ". . . that Mr. Marinucci went far beyond the acceptable and legal conduct, that he actually took his crusade into the streets of this community, far away from the picket line." Marinucci also cites portions of the prosecutor's direct examination of Azarian during which reference was made to Deyoung being chased outside the plant; portions of cross-examination of Azarian during which Azarian spoke of Marinucci being "away from the company," "going to chase our guys out there" and "go and chase them"; and portions of the prosecutor's cross-examination of Marinucci during which the prosecutor characterized Marinucci's actions in following Deyoung as "chasing him down and pursuing him."

Marinucci contended that pursuant to NDCC § 34–08–05(5) his actions in following Deyoung could not be enjoined or restrained by a court and that therefore his conduct was legal and he was entitled to an instruction to that effect.

NDCC § 34–08–05(5) provides as follows:

"No court of this state shall issue any restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute to prohibit any person or persons participating or interested in such dispute from doing, whether singly or in concert, any of the following acts:

5. Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence."

Jury instructions should not mislead or confuse the jury and must fairly inform the jury of the law that must be applied in the case. *State v. Tipler,* 316 N.W.2d 97 (N.D.1982). A trial court may properly refuse to submit an inapplicable or irrelevant instruction to the jury. *State v. Granrud,* 301 N.W.2d 398 (N.D.1981), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981); *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980), *cert. denied* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981). Although the trial court is not required to submit instructions in the specific language requested by a defendant, the defendant is entitled to an instruction based on a legal defense if there is evidence to support it. *State v. Gann,* 244 N.W.2d 746 (N.D.1976).

Marinucci was charged with criminal coercion in violation of NDCC § 12.1–17–06 which provides as follows:

"1. A person is guilty of a class A misdemeanor if, with intent to compel another to engage in or refrain from conduct, he threatens to:

a. Commit any crime;

.    .    .    .    .

"2. It is an affirmative defense to a prosecution under this section that the actor believed, whether or not mistakenly: a. that the primary purpose of the threat was to cause the other to conduct himself in his own best interest; or b. that a purpose of the threat was to cause the other to desist from misbehavior, engage in behavior from which he could not lawfully abstain, make good a wrong done by him, or refrain from taking any action or responsibility for which he was disqualified."

The jury was instructed on the elements of criminal coercion and the affirmative defense to criminal coercion in language which essentially tracked the language of the statute. The jury was also advised that Marinucci had the right to exercise freedom of speech on all subjects,

but that he was responsible for the abuse of that right. We believe that instruction correctly and adequately dealt with Marinucci's right to speak on the facts involved in the labor dispute.

We do not believe the trial court erred in refusing to give the instruction requested by Marinucci pertaining to acts which may not be enjoined or restrained during a labor dispute. Whether or not Marinucci's conduct could have been enjoined by a court was not an issue.[1]

The issue for the jury's determination was whether or not Marinucci, during the course of a labor dispute, threatened to commit a crime with intent to compel Deyoung to engage in or refrain from conduct. We believe the instruction requested by Marinucci was inapplicable because even if Marinucci's conduct could not be enjoined pursuant to NDCC § 34–08–05, he was still legally responsible for that conduct if it violated the criminal law statutes. In this instance the jury was correctly advised on the law concerning criminal coercion and it was essentially a fact question, with inferences to be drawn from those facts, as to whether or not Marinucci's conduct violated the statutory laws on criminal coercion.

The next issue raised by Marinucci is that the trial court erred in denying his motion for judgment of acquittal made at the close of the State's case and renewed after the defense rested.

In *State v. Holy Bull*, 238 N.W.2d 52, 57 (N.D.1975), we addressed the requirements of a motion for acquittal as follows:

"... the trial court is required to approach the evidence from a standpoint most favorable to the prosecution, and is required to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt the motion for judgment of acquittal must be denied. 2 Wright & Miller, Federal Practice and Procedure, § 553, p. 486."

■ We have also observed that circumstantial evidence alone may justify a conviction provided it is of such probative force as to enable the trier of fact to say that the defendant is guilty beyond a reasonable doubt. *State v. Chyle*, 297 N.W.2d 409 (N.D.1980). In instances in which circumstantial evidence is used, the role of this court at the appellate level is to review the evidence to determine if there is competent evidence which allows the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. McMorrow*, 286 N.W.2d 284 (N.D.1979).

■ Marinucci contended that the State did not meet the substantial evidence standard in that it failed to show that he threatened to commit a crime. Marinucci points out that pursuant to NDCC § 12.1–17–06(1)(a) for a person to be guilty of the crime of criminal coercion, that person must, with the intent to compel another to engage in or refrain from conduct, threaten to commit a crime. Marinucci asserted that the State failed to meet this burden because proof was lacking that he either personally or otherwise threatened to commit any crime as required by NDCC § 12.1–17–06(1)(a).

We believe the testimony of Deyoung and Azarian was sufficient to permit an inference that the statements made by Marinucci created an implication and suggestion that Deyoung's property would be damaged. The drawing of the inference of threats from the factual situation and circumstances presented by this case was a jury question and accordingly the court

---

1. North Dakota Century Code § 34–08–07 sets forth the basis and procedure for obtaining a restraining order or injunction during a labor dispute. Subsection (1) provides that an injunction may be issued, after following appropriate procedural safeguards, to restrain unlawful conduct.

properly denied Marinucci's motion for a judgment of acquittal.

The next issue raised by Marinucci is that the trial court improperly assessed the costs of prosecution against him.

At the time of sentencing, the trial court imposed costs of $600.00 against Marinucci. These costs were apparently for witness fees, mileage expenses, and expense account items and reimbursement expenses for two witnesses, Azarian and Deyoung, who traveled from near Racine, Wisconsin, to Fargo, North Dakota. Although there is no voucher for these costs in the record before us, the transcript of Marinucci's sentencing reflects that the voucher for Azarian was approximately $300.00 and that the voucher for Deyoung would be approximately equal.

Marinucci asserted that allowing costs as part of the sentencing has the effect of discouraging a defendant from exercising his constitutional right to either a court or a jury trial.

North Dakota Century Code § 12.1–32–02(1)(a) authorizes the payment of reasonable costs of prosecution as a sentencing alternative. Marinucci's argument, as we understand it, is that this statute is unconstitutional.

█ A statute is conclusively presumed to be constitutional unless it is clearly shown that the statute contravenes the state or federal constitution. *Dorgan v. Kouba*, 274 N.W.2d 167 (N.D.1978). The statute permitting payment of reasonable costs of prosecution as a sentencing alternative is not patently or on its face unconstitutional, nor has any reason been advanced to overcome the presumption of its constitutionality. Neither do we believe that the imposition of costs for out-of-state travel as a part of the sentence has an unconstitutionally chilling effect on a defendant's right to a trial. We must recognize that in many instances the state has no choice in using either in-state or out-of-state witnesses and must, in essence, take its witnesses where it can find them.

█ Marinucci also asserted that the travel expenses of the state's witnesses assessed as costs against him were improperly determined.

Initially we note that the court as a sentencing alternative may assess payment of *reasonable* costs of a defendant's prosecution. Further, NDCC § 31–01–16(2) establishes the compensation for mileage and travel expenses of witnesses and allows a witness in a criminal case to receive:

"2. A sum for mileage and travel expense reimbursement equal to the reimbursement rates provided for state employees in sections 44–08–04 and 54–06–09."

NDCC § 44–08–04 establishes the procedure to determine expenses for meals and lodging. NDCC § 54–06–09 establishes the calculations necessary to determine the reimbursement necessary for mileage and travel expenses for traveling in a motor vehicle.

In this instance we have previously noted the vouchers submitted by Deyoung and Azarian are not part of the record before this Court on appeal and consequently we cannot ascertain the proportion of the costs attributable to meals, lodging and mileage and travel expenses for the two witnesses. However, taking into account that, pursuant to the mileage figure as set out in Marinucci's brief, each witness traveled 1,200 miles round trip and that the trial for this action took one day, and based on the amounts of compensation set forth in NDCC §§ 44–08–04 and 54–06–09, we do not believe the assessment of $600.00 in costs against Marinucci was unreasonable.

Accordingly, the judgment of conviction and the sentence are affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.