**UNITED STATES of America,**
**Appellee,**

v.

**Lamont Gatewood FREEMAN, Appellant,**
**Ollie James Davis and Lee Truman**
**Stevenson.**

**No. 72–1486.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1973.

Decided Feb. 6, 1973.

8

Daniel J. Spellman, Perry, Iowa, for appellant.

Robert L. Fanter, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Lamont Gatewood Freeman, along with two other men, was convicted in the United States District Court for the Southern District of Iowa of violating 18 U.S.C. §§ 2314[1] and 2 (1970). The defendant made a timely motion for Arrest of Judgment on the ground that the indictment under which he was convicted was fatally defective in that it failed to allege and charge an essential element of the crime charged. The trial court denied his motion. We reverse.

The defendant was charged under the following indictment:

"On the 25th day of April, 1972, LAMONT GATEWOOD FREEMAN, OLLIE JAMES DAVIS and LEE TRUMAN STEPHENSON, with unlawful and fraudulent intent, did transport and cause to be transported in interstate commerce from Omaha, Nebraska to Council Bluffs, Iowa in the Southern District of Iowa a check, to wit: check no. 3289, dated April 24, 1972, of George H. Thomas Realty Company, Inc., Omaha, Nebraska, in the amount of $150.00 payable to Henry T. Johnson, signed George H. Thomas, drawn on Ames Plaza Bank, Omaha, Nebraska, account no. 9–077–6 to be used in forging a security.

"This is a violation of Title 18, U.S.C. §§ 2314 and 2."

The government's theory in this case is that "the paper on which the printings of check no. 3289 were placed" has an independent significance and existence of its own apart from the legal significance of the writing that was placed upon it—i. e., the fact that it was a check. As such, the government contends that the paper was a "thing to be used or fitted to be used in forging a security," and that, accordingly, the fifth paragraph of 18 U.S.C. § 2314 (1970) was violated. See, n. 1, *supra.* It argues that this is true even though the paper as originally stolen in Nebraska was a printed but not completed check, which was apparently filled in and signed in Nebraska and then transported to Iowa where it was fraudulently endorsed and cashed. The defendant contends that this paper was a check and by the definition in 18 U.S.C. § 2311 (1970) was itself a "security" and that

---

1. 18 U.S.C. § 2314 (1970) provides in part:

"[3] Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

\* \* \* \* \*

"[5] Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof—

"[6] Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The paragraphs of this statute are not numbered in the United States Code, but we have added numbers for clarity and convenience herein.

The trial judge indicated at the hearing on the motion for Arrest of Judgment that although during trial it was sometimes unclear as to whether the government was proceeding under paragraph [3] or [5], the case was brought under paragraph [5]. The United States Attorney concurred and indicated that a case brought under paragraph [3] would require proof of yet another element—namely, that the defendant knew that the security (check) was forged at the time he transported it in interstate commerce.

it cannot simultaneously be a "thing to be used or fitted to be used in forging a security" (itself). The issue, as we see it, is whether or not Congress intended that the paper on which a check is written may be a " * * * tool, implement or thing used or fitted to be used in * * * forging * * * any security * * * " under the fifth paragraph of 18 U.S.C. § 2314 (1970). See, n. 1, *supra*.

■ As a general rule, penal statutes must be strictly construed. See, *e. g.*, Yates v. United States, 354 U.S. 298, 304, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). It is also true that the intent of Congress is to be gleaned from the plain and ordinary meaning of the language used in the statute. See, *e. g.*, Hanover Bank v. Commissioner, 369 U. S. 672, 687, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962). We view the plain and ordinary meaning of the language at issue here, not to include the paper on which the check was written—the article which is itself the subject of the forgery. Moreover, we believe that Congress meant by this paragraph to prohibit transportation of counterfeiting plates, printing presses and similar paraphernalia. This interpretation is strongly supported by the legislative history of this statute.

The origin of 18 U.S.C. § 2314 (1970) is the National Stolen Property Act. Act of May 22, 1934, ch. 333, 48 Stat. 794, 795. The 1934 Act did not prohibit interstate transportation of instruments to be used in forging, but a 1939 amendment added that prohibition. This amendment, in part, amended § 3 of the National Stolen Property Act to provide:

" * * * [W]hoever with unlawful or fraudulent intent shall transport, or cause to be transported in interstate or foreign commerce, *any bed piece, bed plate, roll, plate, die, seal, stone, type, or other* tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof, shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both * * * ". (Emphasis added.)

Act of August 3, 1939, ch. 413, § 1, 53 Stat. 1178.

■ The doctrine of *ejusdem generis* provides that "when there are general words following particular and specific words, the former must be confined to things of the same kind." Sutherland, Statutory Construction, 814 (2d ed. J. Lewis 1904). See, *e. g.*, Bumpus v. United States, 325 F.2d 264 (10th Cir. 1963); Haili v. United States, 260 F.2d 744 (9th Cir. 1958). This being the rule, it is clear to us that at least in 1939, it can be said that Congress did not intend that the paper on which a check was written was a tool, implement or thing to be used in forging securities. Indeed, the specific words refer to the type of instruments which we indicated earlier was the ordinary and plain meaning of the general words.

It is, of course, true that the current statute, 18 U.S.C. § 2314 (1970), does not contain the specific words which were included in the 1939 amendment. However, the particular words remained in the statute, 18 U.S.C. § 415 (1940), until 1948, when they were excised from the statute by the Revision of Title 18, United States Code. Act of June 25, 1948, ch. 645, 62 Stat. 806. Reference to the Revisor's notes in the report of the House of Representatives' Committee on the Judiciary reveals that the deletion of the particular words was a mere change in phraseology, and there is no indication that it was meant to effect a substantive change. H.R.Rep.No.304, 80th Cong. 1st Sess. A146 (1947). The general purpose of the 1948 revision of the criminal code was to codify and revise, while preserving the original intent of Congress. S.Rep.No.1620, 80th Cong. 2d Sess. 1 (1948). See, United States v. Cook, 384 U.S. 257, 86 S.Ct. 1412, 16 L. Ed.2d 516 (1966). Accordingly, it is clear that the intent of Congress as to the meaning of the general language in the statute in question was not altered by the deletion of the particulars, and

the doctrine of *ejusdem generis* still requires rejection of the notion that the paper on which the check was written could be a "tool, implement or thing used or fitted to be used in forging any security."

We reverse and remand to the trial court for disposition in accordance with this opinion.