STATE OF NEBRASKA, APPELLEE, V. MYRON KEITH WYATT,
APPELLANT.
451 N.W.2d 84

Filed February 2, 1990.   No. 89-061.

Robert P. Lindemeier, Lincoln County Public Defender's Office, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Pursuant to verdict, defendant-appellant Myron Keith Wyatt was adjudged guilty of, among other offenses, first degree false imprisonment, in violation of Neb. Rev. Stat. § 28-314 (Reissue 1989). The trial court also found him to be a habitual criminal, as defined in Neb. Rev. Stat. § 29-2221 (Reissue 1989). Wyatt assigns as error the trial court's (1) conclusion that the evidence is sufficient to support that conviction and (2) finding that he is a habitual criminal. We affirm.

On July 21, 1988, Wyatt and his fiancee, Barbara Norman, also known as Bobbie Williams, were partying with friends Kori Bancroft, Trent Simonson, Paul Basile, and Peggy Gastineau at a North Platte, Nebraska, trailer house. Norman appears to have been married but separated from her husband and was living with Wyatt, to whom she was engaged to marry.

Wyatt and Norman arrived at the trailer at approximately 10 p.m. They had been drinking beer prior to their arrival, each having consumed about five or six beers between 5 and 10 p.m. Later that evening, apparently around midnight, Wyatt, who had to work the next morning, decided to leave and asked Norman to leave with him. She, however, decided to remain at the trailer.

Wyatt left but returned 10 to 15 minutes later, at which time

he was noticeably angry. While Wyatt was away, four of the five persons remaining in the trailer had played a drinking game, during the course of which Norman "chugged" five additional glasses of beer. Norman testified that she was intoxicated and did not have complete recollection of the events which transpired that night. Wyatt asked Norman if she was going to leave with him; she indicated that she wished to stay at the trailer. There is testimony that Wyatt then called Norman a "bitch" and stated that he should "pop [her] in the mouth." Wyatt testified that he tried to "coax" Norman out the door, but she would not move her feet, so he "was a little rough" and "pushed" her out the door. According to witnesses, Wyatt grabbed Norman, carried her to the door of the trailer, and threw her out the door. In throwing Norman out the trailer door, Wyatt forced her off the small porch by the trailer door, down three steps, and onto a concrete sidewalk, as the result of which fall she suffered minor injuries. In addition, Norman testified that she was frightened by the events surrounding her forcible removal from the trailer. Sixteen-year-old Bancroft also testified that she was "scared for" Norman.

After throwing Norman out the door, Wyatt picked her up from the concrete and threw her onto the hood of Basile's pickup truck. Norman testified she remembered being "held up to the truck and hit a couple of times there." Wyatt's testimony is that when he placed Norman on the hood of the pickup, he thought that she was feigning unconsciousness and that he slapped her and "blew in her eye" to determine whether she was conscious.

Meanwhile, Bancroft was telling Wyatt to leave Norman alone while Wyatt yelled at Norman, telling her not to "play her games." At one point, Wyatt told Bancroft's boyfriend, Simonson, that "he better take his woman in the house before she ended up getting hurt." Wyatt then placed Norman on his motorcycle and drove to the motel they occupied. Norman rode on the front part of the motorcycle seat while Wyatt drove to the motel, apparently at a high rate of speed.

Norman testified that after Wyatt placed her on the front of his motorcycle, her "head got hit," and after that she did not remember anything else until after the two were at the motel. The testimony suggests that Norman's head struck the

handlebars of the motorcycle.

The four other persons who had been at the trailer followed Wyatt to the motel. Referring to Wyatt and Norman, Simonson testified, "We saw him pick her up off the bike and carry her into the motel room. . . . He closed the door and turned the lights off and closed the curtains and we heard them yelling, and I ran over and called the police."

Basile then began pounding on the door and yelling at Wyatt to open it. Although Wyatt did not do so, Bancroft was able to summon the motel manager, who then unlocked and opened the door. Wyatt then walked toward the door and indicated that someone should call an ambulance.

When the manager opened the door of the motel room, those present found that Norman had a 4-inch-long, $1/2$-inch-deep cut to her abdomen. Wyatt told Norman to "tell them it was an accident." Norman's testimony was that she did not recall how she suffered the cut to her abdomen. Wyatt testified that the cut suffered by Norman was the result of an accident.

Shortly after the manager opened the door of the motel room, the police and an ambulance arrived. The ambulance then transported Norman to the hospital.

At a hearing held after his convictions, the trial court conducted an enhancement hearing to determine whether Wyatt was a habitual criminal. During the course thereof, the prosecutor introduced into evidence, inter alia, two exhibits consisting of copies of the court files regarding Wyatt's previous felony convictions. One exhibit relates to 1983 convictions, upon counseled pleas of guilty, on three counts of burglary. The other exhibit relates to 1985 convictions, pursuant to verdicts, for attempted burglary and possession of burglar's tools.

In the 1983 case Wyatt was sentenced to concurrent terms of 1 to 3 years on each of the three burglary convictions. In the 1985 case Wyatt was sentenced to concurrent terms of 1 to 4 years and 1 year, but these terms were to be served consecutively to the sentences imposed in the 1983 case. (Wyatt was apparently on parole when he committed the crimes resulting in his prosecution in the 1985 case; thus, after his convictions in that case, he still had time remaining on his earlier convictions

in the 1983 case.)

At the enhancement hearing the trial court found that Wyatt had been convicted of felonies in both the 1983 and 1985 cases and that Wyatt had been sentenced and committed to prison for periods of at least 1 year on each of those convictions. Consequently, the trial court found that Wyatt was a habitual criminal pursuant to § 29-2221. The trial court then sentenced Wyatt as a habitual criminal to imprisonment for a period of 10 to 11 years on the conviction at issue in this case, a Class IV felony.

While the trial court found at the enhancement hearing that Wyatt had been convicted of felonies in both the 1983 and 1985 cases, it did not specifically state its findings regarding the *dates* of those prior convictions. However, a review of the two exhibits makes it clear that Wyatt committed the felonies which resulted in the 1985 case almost a year after sentencing for the felonies resulting in the 1983 case.

It is also noted that the trial court's journal entry regarding the enhancement hearing fails to set forth any finding with respect to the 1985 case and fails to detail a finding as to the date of the conviction in the 1983 case.

As his first assignment of error, Wyatt argues that the evidence adduced by the State was insufficient to permit the jury to find him guilty beyond a reasonable doubt of first degree false imprisonment.

On appeal, the Nebraska Supreme Court will reverse a verdict of guilty when the evidence is so lacking in probative force that the court can say as a matter of law that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt. *State v. Frazier, ante* p. 107, 449 N.W.2d 230 (1989); *State v. Auman,* 232 Neb. 341, 440 N.W.2d 254 (1989).

In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence; such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Frazier, supra*; *State v. Johns,* 233 Neb. 477, 445 N.W.2d 914 (1989);

*State v. Wokoma*, 233 Neb. 351, 445 N.W.2d 608 (1989).

The statute under which Wyatt was charged is § 28-314, which states in relevant part:

> (1) A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (a) under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury . . . .
>
> (2) False imprisonment in the first degree is a Class IV felony.

Neb. Rev. Stat. § 28-312 (Reissue 1989) defines the terms "abduct" and "restrain" as they apply to § 28-314:

> (1) Restrain shall mean to restrict a person's movement in such a manner as to interfere substantially with his liberty:
>
> (a) By means of force, threat, or deception . . .
>
> . . .
>
> (2) Abduct shall mean to restrain a person with intent to prevent his liberation by:
>
> (a) Secreting or holding him in a place where he is not likely to be found; or
>
> (b) Endangering or threatening to endanger the safety of any human being.

Wyatt argues that there exists nothing in the record to show that Norman's movement was ever restricted in such a manner as to substantially interfere with her liberty and that she never testified to any restraint of her movement nor any interference with her liberty. Wyatt further argues that the State failed to prove the occurrence of an abduction as defined by the statute or the existence of "terrorizing circumstances or under circumstances which exposed Barbara Norman to the risk of serious bodily injury." Brief for appellant at 8.

Despite Wyatt's arguments, the fact is that Norman testified that she did not want to leave the trailer. When Wyatt angrily returned to the trailer to ask Norman to leave with him, she expressed her desire to remain. In response, Wyatt picked her up, carried her to the door, and threw her out the door, forcing her off the porch and onto a concrete sidewalk. Norman testified that she suffered injuries from the fall and that she was

frightened. Bancroft testified that she was "scared for Bobbi," indicating that she feared for Norman's safety.

After throwing Norman out the trailer door, Wyatt picked her up from the concrete, threw her onto a pickup truck, and then carried her to a motorcycle, on which he drove her away from the trailer and back to the motel room. The events invoked enough fear and apprehension for Norman's safety as to cause the four other persons who had been at the trailer to follow Wyatt to the motel and summon the motel manager to unlock the door in an effort to rescue Norman from potential harm.

The evidence presented at trial provides ample support for a jury to conclude that Wyatt, by means of force and under terrorizing circumstances or circumstances which exposed Norman to the risk of serious bodily injury, knowingly restricted Norman's movement in such a manner as to interfere substantially with her liberty.

While it seems that no citation of case law is needed to dispose of Wyatt's first assignment of error, we nonetheless note that this court has previously considered appeals of first degree false imprisonment convictions. In *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56 (1988), we found sufficient evidence to support a conviction for first degree false imprisonment when the victim had been restrained in her own home.

Although not directly addressing a sufficiency of evidence question, *State v. Schwartz*, 219 Neb. 833, 366 N.W.2d 766 (1985), held that the appellant in that case was not entitled to a second degree false imprisonment jury instruction when he had abducted his victim at knife point. The *Schwartz* court stated:

> There was no evidence contradicting the fact that a knife was held against the victim's throat during the entire time defendant was transporting her, and no evidence contradicting the fact that such conduct exposed the victim to the risk of serious bodily injury, and that such conduct constituted "terrorizing circumstances."

*Id*. at 838, 366 N.W.2d at 770.

Wyatt's second assignment of error claims that the trial court erred in finding him to be a habitual criminal. With respect to this assignment of error, Wyatt first asserts that the trial court made no finding as to the dates of Wyatt's prior convictions and

that because of this omission, Wyatt cannot be determined to be a habitual criminal.

Section 29-2221 states:

> (1) Whoever has been twice convicted of crime, sentenced and committed to prison . . . for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the Department of Correctional Services adult correctional facility for a term of not less than ten nor more than sixty years . . . .

> (2) . . . At the hearing [held to determine whether the accused is an habitual criminal], if the court shall find from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state, or by the United States, the court shall sentence such person so convicted as an habitual criminal.

Wyatt cites *State v. Ellis*, 214 Neb. 172, 333 N.W.2d 391 (1983), for the proposition that absent a finding as to the dates of his two prior convictions, Wyatt cannot be determined to be a habitual criminal. In *Ellis*, this court decided that "in order to warrant the enhancement of the penalty under the Nebraska habitual criminal statute, § 29-2221, the prior convictions, except the first conviction, must be for offenses committed after each preceding conviction, and all such prior convictions must precede the commission of the principal offense." 214 Neb. at 176, 333 N.W.2d at 394. See, also, *State v. Lieberman*, 222 Neb. 95, 382 N.W.2d 330 (1986).

The record clearly establishes that the trial court based its finding that Wyatt was a habitual criminal upon his aforedescribed previous convictions. However, Wyatt argues that *Ellis* required the trial court to specifically state that it found that Wyatt's commission of the felonies which precipitated the 1985 case occurred after his conviction in the 1983 case and that each of those convictions occurred prior to his commission of a felony in the present case.

Contrary to Wyatt's analysis, *Ellis* does not require the trial court to follow such technical steps in order to determine that

Wyatt was a habitual criminal. In applicable part, § 29-2221 states only that "if the court shall find from the evidence submitted that the accused has been convicted two or more times of felonies and sentences [have been] imposed therefor . . . the court shall sentence such person so convicted as an habitual criminal." *Ellis* merely requires that each of the applicable felonies being considered, other than the first felony, must occur after a conviction for the previous felony in order for such crimes to serve as a basis for sentencing under the habitual criminal statute.

In the present case the trial court did find that Wyatt had been convicted in the 1983 and 1985 cases and that Wyatt was sentenced and committed to prison for terms of not less than 1 year in each of those cases. The record clearly shows that on May 3, 1983, Wyatt pled guilty to the felony charges against him in the first, or 1983, case and that sentencing occurred on October 11, 1983. The record further shows that in the second, or 1985, case Wyatt was convicted on January 16, 1985, of felonies he committed on or about October 4, 1984, and that sentencing occurred on January 21, 1985. In the present case the jury determined that Wyatt committed first degree false imprisonment on July 21, 1988. Thus, each of Wyatt's felonious acts, other than the first, occurred after his conviction for the immediately preceding felony, and the trial court correctly determined Wyatt to be a habitual criminal under § 29-2221.

Next, with respect to his second assignment of error, Wyatt argues that the State failed to prove he was twice previously convicted on the dates alleged in the information. Wyatt asserts that the evidence offered by the State does not prove convictions on January 21, 1985, and October 11, 1983, the dates alleged in the information as the dates on which Wyatt was previously convicted.

The portion of the information charging Wyatt with being a habitual criminal states in part that "defendant has been twice convicted of crime, sentenced and committed to prison . . . and is therefore an habitual criminal, to wit: 1. January 21, 1985, Lincoln County 2. October 11, 1983, Lincoln County . . . ." The record clearly shows that the dates which were alleged in the information are the sentencing dates for Wyatt's two prior

convictions. Thus, it cannot be said that Wyatt was not adequately informed of the basis for charging him as a habitual criminal.

Moreover, even if the information had contained a minor discrepancy with respect to the dates of the prior convictions, the exact time of the commission of an alleged prior felony is not of the essence of a charge under the habitual criminal statutes, and the failure of the information to accurately state the time of a prior felony does not render the information insufficient. *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989). Furthermore, Wyatt fails to indicate how he may have been misled or prejudiced by the manner in which the information referenced his prior convictions. See, *State v. Jameson*, 224 Neb. 38, 395 N.W.2d 744 (1986); *State v. Juhl, ante* p. 33, 449 N.W.2d 202 (1989). The State adequately referenced Wyatt's prior convictions in the information, and the State presented ample proof for the trial court to determine that Wyatt should be convicted as a habitual criminal.

Finally, with respect to his second assignment of error, Wyatt argues that the State failed to prove that he was twice previously committed to prison for a period of not less than 1 year. Wyatt points out that the two exhibits from the enhancement hearing show that Wyatt was sentenced to prison on October 11, 1983, and that he was then charged with a crime which occurred in Lincoln County on October 4, 1984; Wyatt asserts that this indicates that he could not have been committed to prison for a period of 1 year with respect to his first conviction. The essence of Wyatt's argument is that in order for him to be sentenced as a habitual criminal, he must have twice *served* at least 1 year in prison.

Contrary to Wyatt's assertion, § 29-2221 requires that in order to convict a person as a habitual criminal, that person must have been "twice convicted of crime, sentenced and committed . . . for terms of not less than one year each . . . ." The statute sets forth no requirement respecting time served. In *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), this court held that it is the term of a defendant's prior sentences and not the time actually served which controls the applicability of the habitual criminal penalty.

Although the trial court's granting of credit for time served in the county jail may have resulted in Wyatt's spending less than 1 year in prison with respect to his first conviction, he was nevertheless convicted, sentenced, and committed to prison for a term of not less than 1 year.

There being no merit to either of Wyatt's assignments of error, the judgment of the trial court is affirmed.

AFFIRMED.