**STATE of North Dakota, Plaintiff and Appellee,**

v.

**LeAnn Rae PLENTYCHIEF, Defendant and Appellant.**

Cr. No. 890391.

Supreme Court of North Dakota.

Dec. 17, 1990.

James Forster Twomey (argued), Asst. States Atty., Fargo, for plaintiff and appellee.

Gackle, Johnson, Rodenburg and Trader, Fargo, for defendant and appellant; argued by Bruce D. Johnson.

MESCHKE, Justice.

LeAnn Plentychief appealed from a jury conviction of attempted felonious restraint under terrorizing circumstances. We reverse for lack of competent evidence for the conviction, but we remand for a new trial on lesser offenses of unlawful imprisonment or attempted unlawful imprisonment.

One evening in March 1989, Plentychief and a friend, Odile Pierce, visited several taverns in Fargo. Near 1:00 a.m. the next morning, Plentychief, Pierce, and two companions left the Roundup Bar and crossed the street to the Greyhound Bus depot to call a cab to go to a local restaurant.

About the same time, an east-bound Greyhound Bus stopped at the depot. During the stopover, passengers Carol Jones, her four-year-old granddaughter Tara Reichow, and college student Jeanne Walsh left the bus and entered the depot to use the restroom. No one else was in the restroom. Jones entered the first stall in the restroom while Tara waited for her outside that stall. Walsh began washing her face and brushing her teeth in a nearby sink.

Moments later, Plentychief entered the restroom, approached Tara, and asked, "Where's your mommy?" Tara did not respond. According to Walsh's testimony, Plentychief then said something to Tara, like "Well, I'm your mommy now." Plentychief grasped Tara by the left hand and said, "Come on, let's go." Aware that Tara was Jones's granddaughter, Walsh intervened. Walsh went towards Plentychief, banged on the door of Jones's stall, and called, "Was somebody supposed to take your granddaughter out of here?" Jones replied, "What? No." Walsh grasped Tara's other hand and said to Plentychief in a sharp tone, "Excuse me."

Plentychief let go of Tara and left the restroom without saying another word.

When Jones came out of the stall, Walsh reported, "A lady came in and tried to take your granddaughter." Walsh pointed Plentychief out to Jones outside the restroom, and Jones complained to depot personnel. Plentychief was detained by a security guard for Greyhound. Walsh overheard Plentychief respond to questioning "almost apologetically," by answering, "I'm sorry, it's not my child. It's not my child."

Plentychief was arrested and charged, alternatively, with attempted abduction or attempted felonious restraint under terrorizing circumstances in violation of NDCC 12.1–18–02. That section says:

A person is guilty of a class C felony, if he:

1. Knowingly abducts another;

2. Knowingly restrains another under terrorizing circumstances or under circumstances exposing him to risk of serious bodily injury; ....

At the trial, both Jones and Walsh testified about the incident. The security guard testified that, when he asked Plentychief about Jones's complaint, Plentychief denied having done anything. Police officers testified that, when she was questioned at both the depot and later at the jail, Plentychief responded profanely and insisted that she hadn't done anything wrong. At the conclusion of the prosecution's case, Plentychief unsuccessfully moved for a judgment of acquittal for lack of evidence, including that the State failed "to prove that there were terrorizing circumstances."

The jury was instructed to return only a single verdict from among the forms submitted for the alternative felony charges, lesser misdemeanor offenses, and a finding of not guilty. The jury found Plentychief guilty of attempted felonious restraint under terrorizing circumstances, but did not return a verdict on the alternative charge of attempted abduction, thereby acquitting Plentychief of that charge. 76 Am.Jur.2d *Trial* § 1151 (1975); 23A C.J.S. *Criminal Law* § 1408 (1989). The jury did not get to the submitted lesser offenses of unlawful imprisonment or attempted unlawful imprisonment. *See* NDCC 12.1–18–03.[1] Plentychief appealed.

■ On appeal, Plentychief contends that the trial court's instruction to the jury on the definition of "terrorizing circumstances" was misleading and that the evidence was insufficient to convict Plentychief of attempted felonious restraint under terrorizing circumstances. We agree.

"Terrorizing circumstances" are not spelled out in NDCC 12.1–18–02(2) which defines that category of felonious restraint. Drawing on nearby NDCC 12.1–17–04,[2] describing the offense of terrorizing, Plentychief requested the following instruction:

"Terrorizing circumstances" means circumstances that result when threats of violence or acts dangerous to human life are made with intent to place another human being in fear of that human being's safety.

Without attributing any source, the State requested a different kind of instruction about "terrorizing circumstances":

In determining whether terrorizing circumstances existed you should consider

---

1. NDCC 12.1–18–03 says:
   *Unlawful imprisonment.*
   1. A person is guilty of a class A misdemeanor if he knowingly subjects another to unlawful restraint.
   2. It is a defense to a prosecution under this section that the actor is a parent or person in equivalent relation to the person restrained and that the person restrained is a minor.

2. NDCC 12.1–17–04 says:
   *Terrorizing.* A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or anoth-

er's safety or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:
   1. Threatens to commit any crime of violence or act dangerous to human life; or
   2. Falsely informs another that a situation dangerous to human life or commission of a crime of violence is imminent knowing that the information is false.

all of the facts surrounding the commission of the criminal offense. In doing so, you should consider the acts that you find the defendant to have committed as well as her intent in committing those acts. In considering the defendant's intent you should look to whether she intended to place another person in fear for that person's or another person's safety. Likewise, you may consider the age, experience, or any other relevant circumstances of the person or persons to whom the acts were directed, as well as any other individual the defendant knew or should have known would have observed or experienced the circumstances created by the defendant.

The trial court blended the two requests: "Terrorizing circumstances" means circumstances that result when threats of violence or acts dangerous to human life are made with intent to place another human being in fear of that human being's safety. In determining whether terrorizing circumstances existed you should consider the acts that you find the Defendant to have committed as well as her intent in committing those acts. In considering the Defendant's intent you should look to whether she intended to place another person in fear for that person's or another person's safety. Likewise, you may consider the age, experience, or any other relevant circumstances of the person or persons to whom the acts were directed.[3]

This definition was given in that part of the instructions on "DEFINITIONS."

Counsel for Plentychief objected that this lengthy definition of terrorizing circumstances "will confuse the jury," and "will put in facts and circumstances that are outside the definition." Specifically, Plentychief urged the trial judge that "the age and experience of the person to whom the acts are directed is not a correct interpretation" because "[t]errorizing deals only with a threat made by the actor and has nothing to do with the recipient of the threat." Plentychief objected further that "even if the person is not affected by the threat, it still [must be] an act of terrorizing." The objections were overruled.

Jury instructions must fairly and adequately inform the jury of the law that applies in a criminal case and should not be misleading or confusing. *State v. Saul*, 434 N.W.2d 572 (N.D.1989). We believe that the jury was misled by the trial court's meandering definition of "terrorizing circumstances." If so, the misdirection is attributable to the prosecution's dilution of the meaning of "terrorizing circumstances" by requesting pallid additions having little to do with its important ingredients. Words or phrases explained or defined by statute are to be understood as thus explained or defined. NDCC 1–02–02; *State v. Johnson*, 417 N.W.2d 365, 369 (N.D. 1987). It is a well-settled rule of statutory construction that criminal statutes are strictly construed in favor of the defendant and against the government. *City of Bismarck v. Sholy*, 430 N.W.2d 337, 338 (N.D. 1988). The instruction given departed from the statutory definition, and clouded the

---

**3.** The trial court separately instructed on intent and motive as follows:

### INTENT
The intent or purpose with which an act is committed is a mental process and generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be proved, with which it is claimed to be connected.

### MOTIVE
Proof of a motive for commission of a crime is permissible and often valuable, but never

essential. If, after a consideration and comparison of all the evidence, you feel an abiding conviction to a moral certainty that the Defendant committed the crime of which she is accused, the motive for its commission becomes unimportant. Evidence of motive is sometimes of assistance in removing doubt and completing proof that otherwise might be unsatisfactory. Motive may be shown by direct evidence or by facts supporting a reasonable inference. If thus proved, motive becomes nothing more than a circumstance to be considered by you. The absence of motive is a circumstance tending to support the presumption of innocence, and should be given such weight and credibility as you think it deserves.

essential elements of threats of violence or dangerous acts made with an intent to induce fear.

■ The State must prove each of the elements of the offense charged beyond a reasonable doubt. *State v. Kurle*, 390 N.W.2d 48, 49 (N.D.1986). On review, we look for competent and substantial evidence from which the jury could reasonably conclude that Plentychief was guilty of each of the essential elements of the offense. *Id.* "[W]e do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *State v. Johnson*, 425 N.W.2d 903, 906 (N.D.1988). *See also State v. Miller*, 357 N.W.2d 225, 226 (N.D.1984); *State v. McMorrow*, 286 N.W.2d 284, 287 (N.D. 1979). Viewing this evidence in any light, we are unable to comprehend Plentychief's conduct as including the essential elements of "threats of violence or acts dangerous to human life" made with an intent to induce fear.

The dissent suggests that the jury might have inferred a baleful meaning from what Plentychief did. It is true that innocuous words or acts may sometimes take on noxious meanings by innuendo from their context. *See State v. Hass*, 268 N.W.2d 456, 463 (N.D.1978). Still, in a rule of law, an untoward meaning must be intelligible, not imaginable, and based on evidence, not guesswork. In this case, there was no testimony that characterized or described Plentychief's conduct as tacitly threatening or violent.

We see no competent evidence of words or acts from which the jury could reasonably infer that Plentychief was guilty of threats of violence or acts dangerous to human life intended to induce fear. *Compare State v. Brown*, 235 Neb. 374, 455

N.W.2d 547, 552 (1990); *State v. Wyatt*, 234 Neb. 349, 451 N.W.2d 84, 89 (1990); *State v. Moreno*, 228 Neb. 210, 422 N.W.2d 56, 61 (1988). Since there is no competent evidence that would fairly warrant the conviction for felonious restraint under terrorizing circumstances, we reverse and remand for a new trial on the undecided misdemeanor charges of unlawful imprisonment or attempted unlawful imprisonment, which we believe this evidence would support.[4]

GIERKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, dissenting.

I dissent. Not only does the majority opinion conclude that the instruction defining "terrorizing circumstances" is erroneous, but it also concludes that, assuming a correct instruction were given, whatever that instruction might be, the evidence could not be sufficient to convict Plentychief for the crime charged. I disagree with both conclusions.

The trial court is not required to submit an instruction to the jury in the specific language requested by a defendant, if the submitted instruction fairly informs the jury. *State v. Marinucci*, 321 N.W.2d 462 (N.D.1982). The submitted jury instruction did fairly and adequately inform the jury. The first sentence of the submitted instruction mimicked Plentychief's requested instruction. The remaining sentences in the submitted instruction served to clarify the initial sentence. Plentychief suggests that the essence of terrorizing circumstances is a threat made with the intent to cause terror. The submitted jury instruction echoes that suggestion, informing the jury to consider both the threatening acts and the purpose or intention of the acts. The submitted jury instruction not only fairly informed the jury but also "harmonized" with the definition of terrorizing contained in section 12.1–17–04.[1]

---

4. Because Plentychief has been acquitted of the alternative felonies charged, retrial of those charges would be barred by the double jeopardy clause. *See State v. McMorrow*, 286 N.W.2d 284 (N.D.1979); *State v. Ellvanger*, 453 N.W.2d 810, 816 n. 3 (N.D.1990).

1. Section 12.1–17–04, NDCC, provides:
   "*Terrorizing.* A person is guilty of a class C felony if, with intent to place another human being in fear for that human being's or another's safety or to cause evacuation of a building, place of assembly, or facility of public

Plentychief argues that the jury should not have been instructed to consider the child's age because that instruction implies that less proof is necessary if a child is involved. The instruction carries no such implication.

The intent to place another human being in fear was an element of terrorizing circumstances agreed upon by both Plentychief and the trial court. When determining intent, it is necessary to determine whether the actor believed, based on her knowledge of the circumstances, that her actions would instill fear in another human being. Actions are tailored to circumstances to produce intended results. Evidence of the actor's knowledge of the circumstances may serve as proof of the actor's intent. Instructing the jury to consider the child's age and other relevant circumstances does not imply that less proof is required for a child, but rather informs the jury as to what evidence may be considered as proof of the actor's intent to place another human being in fear.

I strongly object to the majority's observation that the portion of the instruction permitting the jury to consider the "age, experience, or any other relevant circumstances of the person or persons to whom the acts were directed" are "pallid additions having little to do with its important ingredients." The majority opinion has placed the weak, the young and the invalid at the mercy of their tormentors. It requires no great intellect to conclude that a different inference may be drawn by the trier of fact from a remark made to a strong, healthy person and one made to an invalid. The intent of the perpetrator is indeed directly related to the condition of the victim and to imply otherwise does a disservice to the very young, the aged and the infirm.

Plentychief next contends that the evidence was insufficient to sustain a verdict of guilty to the charge of attempted felonious restraint. In particular, Plentychief argues that the State did not prove that the restraint was accomplished under terrorizing circumstances. In order to successfully challenge the sufficiency of the evidence, Plentychief must show that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *City of Bismarck v. Nassif,* 449 N.W.2d 789 (N.D.1989). Plentychief has failed to meet that burden.

The record reveals evidence from which the jury could have found that Plentychief restrained Tara Reichow under terrorizing circumstances. Tara was a four-year-old child standing alone in the restroom of a bus depot in an unfamiliar town. Plentychief approached Tara and asked "Where is your mommy?" Plentychief then made a statement to the effect, "Well I'm your mommy now," grabbed the child's hand and said, "Come on, let's go."

Plentychief contends that her actions did not constitute "threats of violence or acts dangerous to human life." This Court has stated that "[a] threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited. [Citation omitted.]" *State v. Howe,* 247 N.W.2d 647, 654 (N.D.1976). The jury could properly find that the meaning of the words and actions of Plentychief in the context in which they were used constitut-

---

transportation, or otherwise to cause serious disruption or public inconvenience, or in reckless disregard of the risk of causing such terror, disruption, or inconvenience, the person:

"1. Threatens to commit any crime of violence or act dangerous to human life; or

"2. Falsely informs another that a situation dangerous to human life or commission of a crime of violence is imminent knowing that the information is false."

Section 12.1–17–04 includes actions taken in reckless disregard of the risk of causing terror, disruption or inconvenience. A definition of terrorizing patterned solely on that section without including this portion or further explaining the term, as did the trial court, would distort the meaning and intent of the definition.

I would not hold that the definition of terrorizing circumstances under section 12.1–18–02, NDCC, must be derived from section 12.1–17–04 as a matter of law. There is nothing in chapter 12.1, nor in the legislative history of that chapter which would demand such a holding. As a general rule, words not defined in a statute are to be understood in their ordinary sense. NDCC § 1–02–02.

ed a threat of violence or act dangerous to human life. The threat of violence or act dangerous to human life was the attempted forcible detention of a four-year-old child and separation of that child from family, her only known means of physical and emotional support. Such actions taken upon a four-year-old child constitute terrorizing circumstances.

The evidence when viewed in a light most favorable to the verdict, permits a reasonable inference of guilt. In order to conclude that there is "no competent evidence from which the jury could reasonably infer that Plentychief was guilty of threats of violence or acts dangerous to human life," the majority necessarily draws its own inferences from Plentychief's statements and injects itself as the trier of fact rather than the jury.

It is not difficult to attribute meanings to Plentychief's statements which rise to the level of threats of violence or acts dangerous to human life. Because the jury did not find Plentychief guilty of attempted abduction, the majority apparently takes comfort in a conclusion that Plentychief did not intend any such act. But that is a dangerous exercise when indulged in by an appellate court. Why the jury convicted of attempted felonious restraint rather than attempted abduction is known only to the jury. Whether it would have convicted of attempted abduction had it known this Court would reverse a conviction of felonious restraint is also known only to the jury. The jury could also logically have concluded from her statements that Plentychief intended violent acts or acts dangerous to human life other than abduction. Appellate courts ought not arrogate to themselves the function of the jury when the jury draws permissible inferences from the facts, and reaches a different result than the appellate court desires.

I would affirm the judgment of conviction.

ERICKSTAD, C.J., concurs.

