**Ollie J. DAVIS, Appellant,**

v.

**STATE OF NEBRASKA; Frank Gunther, Warden for the State of Nebraska; Karen Shortridge, Warden for the Omaha Correctional Center, Appellees.**

No. 91–1129.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1991.

Decided March 11, 1992.

Bernard McNary, Omaha, Neb., argued, for appellant.

Alfonza Whitaker, Lincoln, Neb., argued, for appellees.

Before FAGG, Circuit Judge, TIMBERS,* Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Ollie J. Davis appeals the order of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). Because we find that Davis could not have foreseen the state court's

---

* THE HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Sec-

ond Circuit, sitting by designation.

interpretation of its habitual criminal statute, we conclude that the court's retroactive application of its interpretation to Davis was a violation of the due process clause of the Fourteenth Amendment.[1] We thus reverse and remand to the district court for action consistent with this opinion.

## I.

Davis contends the State applied its Habitual Criminal Act, Neb.Rev.Stat. § 29–2221 et seq. (Reissue 1989), in an unforeseeable manner when it combined elements of two of his prior convictions to make one predicate conviction under the statute. The facts surrounding these convictions are complex. In 1972, Davis was found guilty in federal district court of four counts of transportation of a forged security. He was sentenced to four years' imprisonment. In 1973, Davis' conviction was overturned because the indictment under which he had been charged was fatally defective[2] and he was released from prison. Later that year the government refiled the four counts. Davis pled guilty to one count—the other three counts were dropped—and Davis was sentenced to three years' imprisonment. This sentence was suspended and Davis was placed on probation for three years. In 1975, Davis pled guilty to a charge of unlawful delivery of a controlled substance.[3] As a result of this conviction, his probation in the 1973 case was revoked. The court reinstated the three-year sentence, and ordered Davis to report to the United States Marshal to begin serving this sentence. In calculating the time to be served on this sentence, however, the court gave Davis credit for

time served for his 1972 conviction, for time spent in pretrial detention prior to the 1973 conviction, and for time served on probation for the 1973 conviction. Because these credits exceeded the three-year sentence term, the court withdrew the order requiring Davis to report to the Marshal and the commitment papers were returned to the court unexecuted.

In 1986, Davis was found guilty of second degree forgery in Nebraska. The trial court held a hearing to determine whether Davis should receive an enhanced sentence as a habitual criminal pursuant to the Nebraska Habitual Criminal Act. The court found that Davis was a habitual criminal and sentenced him to twelve to eighteen years' imprisonment. Davis claims that the trial court erroneously determined that he was a habitual criminal. He unsuccessfully appealed the habitual criminal determination to the Nebraska Supreme Court, *State v. Davis*, 224 Neb. 518, 398 N.W.2d 729 (1987), and was subsequently denied postconviction relief. *State v. Davis*, 228 Neb. 622, 423 N.W.2d 487 (1988). In 1989, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court. After an evidentiary hearing, the district court denied Davis' petition on the merits. Davis now appeals the district court's order denying his petition.

The State must prove three elements in order to show that a person is a habitual offender under the Nebraska Habitual Criminal Act: the person must have been (1) twice previously convicted of a crime, (2) sentenced, and (3) committed to prison for terms not less than one year each.[4] *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884, 889

---

1.  Davis raised two other issues on appeal. Because we find that Davis' due process rights were violated, we need not reach them here.

2.  Davis did not appeal his conviction. A co-defendant, however, did appeal, and the conviction was overturned by this court because of the defective indictment. *See United States v. Freeman*, 473 F.2d 7 (8th Cir.1973).

3.  This was the second predicate conviction used to convict Davis of being a habitual criminal. There is no dispute about this conviction, however, and it is only relevant here as it impacted

on the progression of events in the 1973 conviction.

4.  The statute reads, in pertinent part:
    Whoever has been twice convicted of a crime, sentenced and committed to prison ... for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment ... for a term of not less than ten nor more than sixty years....
    Neb.Rev.Stat. § 29–2221(1) (Reissue 1989).

(1974). The information charging that Davis was a habitual criminal did not clearly rely on either the 1972 or the 1973 conviction as a predicate offense. Instead, the information combined the facts of the two cases to meet the three elements of a predicate conviction under the statute. The information read, in relevant part,

> that on or about the 18th day of June, 1973, OLLIE J. DAVIS also known as OLLIE JAMES DAVIS
>
> .    .    .    .    .
>
> did, as shown in the case of United States of America vs. Ollie James Davis, *Docket 72–54* [the 1972 case], in the United States District Court for the Southern District of Iowa, *plead guilty to the offense of Interstate Transportation of a Forged Security* in Violation of Title 18, Sections 2314 and 2, U.S.Code, *and was on the 18th day of June, 1973, sentenced by the court to serve a term of three years* at the Federal Reformatory at El Reno, Oklahoma, *and was delivered to the custody of the Attorney General for imprisonment, at El Reno, Oklahoma on the 17th day of August, 1972,* in pursuance of said judgment and sentence of the court; . . . .

Pl.Ex. 2 at 9 (emphasis added). Davis contends that, under Nebraska law as it existed at the time he was found to be a habitual offender, it was unforeseeable that the state court would interpret § 29–2221(1) to allow the State to combine elements of two previous convictions to form one predicate conviction under the statute. We agree.

## II.

Initially, we recognize that the state supreme court has final authority to interpret state statutes. *See, e.g., Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Kifer v. Liberty Mut. Ins. Co.,* 777 F.2d 1325 (8th Cir.1985). We are bound by the Nebraska Supreme Court's construction of a state penal statute. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679. We are not bound by the state court's determination that its construction does not violate the constitutional right to due process, *Helton v. Fauver,* 930 F.2d 1040,

1044 (3d Cir.1991); however, in the interests of federalism we apply exacting scrutiny to such claims. "In order to establish a denial of due process the petitioner must prove that the asserted error was so 'gross', 'conspicuously prejudicial', or otherwise of such magnitude that it . . . failed to afford petitioner the fundamental fairness which is the essence of due process." *Maggitt v. Wyrick,* 533 F.2d 383, 385 (8th Cir.) (discussing state procedural error) (citing *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289–90, 86 L.Ed. 166 (1941)), *cert. denied,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

■ As a general rule, it violates due process to retroactively apply an unforeseeable construction of a state law, even though the construction is legitimate. *Oxborrow v. Eikenberry,* 877 F.2d 1395, 1399 (9th Cir.), *cert. denied,* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989); *see also Helton,* 930 F.2d at 1044–45.

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*Bouie v. Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964); *see also Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (restating *Bouie* principle).

■ Not every retroactive change in the law, however, rises to the level of a constitutional violation. The Supreme Court has held that a retroactive law is unconstitutional if it "punishes as a crime an act previously committed, which was innocent when done; [ ] makes more burdensome the punishment for a crime, after its commission; or [ ] deprives one charged with a crime of any defense available according to law at the time when the act was committed. . . ." *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30

(1990) (adopting analysis set forth in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Thus, it is unconstitutional to "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Id.; see also Collins*, 110 S.Ct. 2715 (ex post facto prohibition applies to increases in punishment for conduct already criminal); *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir.1989) (constitutional due process protections extend to judicial interpretations that unforeseeably expand punishment accompanying conviction beyond what actor could have anticipated when committing criminal act), *cert. denied*, 494 U.S. 1058, 110 S.Ct. 1528, 108 L.Ed.2d 767 (1990); *Devine v. New Mexico Dep't of Corrections*, 866 F.2d 339 (10th Cir.1989) (constitutional due process protections extend to unforeseeable reliance on law that, although passed at same time, directly conflicted with law in official compilation; law affected eligibility for parole); *Rubino v. Lynaugh*, 845 F.2d 1266 (5th Cir.1988) (constitutional due process protections extend to unforeseeable judicial abandonment of "carving" doctrine—prohibiting prosecution of individuals for multiple offenses rising out of same act or series of acts—that could increase penalty).

Likewise, a retroactive application of a judicial interpretation of a law violates due process if any one of the three tests applies. *Helton*, 930 F.2d at 1045. In Davis' case, both the second and third tests are met if the state court's interpretation of the statute was unforeseeable. The second test would be satisfied because the court's interpretation resulted in substantially increased punishment for Davis' crime. He was sentenced to twelve to eighteen years' imprisonment as a habitual criminal. Under Nebraska law, second degree forgery in the amount Davis attempted is a Class

IV felony, Neb.Rev.Stat. § 28–603(3) (Reissue 1989), subjecting him to a maximum sentence of five years or a fine of $10,000 or both. Neb.Rev.Stat. § 28–105(1) (Reissue 1989). The third test also would be met because the state court's interpretation of the Habitual Criminal Act deprived Davis of the defense that he did not have the two requisite predicate convictions under § 29–2221(1) and therefore could not be found to be a habitual criminal.

### III.

Because the statute was in effect before Davis committed his act of forgery in Nebraska, however, the *Bouie* tests are only met if the state court's interpretation was unforeseeable. Thus, the real issue here is whether a reasonable person could have foreseen an interpretation of § 29–2221(1) allowing the State to rely on the conviction and sentence in the 1973 case in combination with the commitment to prison in the 1972 case as one predicate conviction.

We first note that the 1972 conviction, standing alone, cannot meet the requirements of the statute. That conviction was constitutionally invalid. The State conceded at the habeas hearing that a constitutionally invalid conviction cannot be relied upon as a predicate conviction under § 29–2221(1). Tr. at 66–67. *Cf. Smith v. Scully*, 614 F.Supp. 1265, 1267 (S.D.N.Y.1984) ("an invalid conviction cannot be used as a predicate in sentencing a defendant as a second felony offender").[5] Likewise, the 1973 conviction, standing alone, does not meet the requirements of the statute because Davis was never actually committed to prison in that case.[6]

The plain language of the statute supports the proposition that the court's interpretation of § 29–2221(1) to allow elements of two different convictions to constitute one predicate conviction was unforeseeable.

---

**5.** Even without the State's concession, the 1972 conviction could not be relied upon as a predicate conviction. The conviction was vacated because the indictment was constitutionally defective. A defective indictment is jurisdictional. Consequently, the convicting court did not have jurisdiction over Davis and, legally, the conviction never took place. *See United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir.1988).

**6.** Although commitment papers were issued by the court when Davis' probation was revoked, they were returned to the court unexecuted when it was discovered that Davis' credits for time served totalled more than the original sentence. Davis was never delivered to the Marshal, or even released on bond pending his delivery to prison after his probation was revoked. He left the courthouse under no restrictions whatsoever.

The statute reads, in relevant part, "[w]hoever has been twice convicted of a crime, sentenced and committed to prison ... for terms of not less than one year each....", Neb.Rev.Stat. § 29-2221(1). It seems apparent that "convicted ... sentenced and committed to prison" means that the person has to be committed on the sentence received for the conviction on which the State relies. In addition, the word "each" emphasizes the unitary character of each conviction, sentence and commitment. Even the state's attorney at Davis' habeas hearing testified that, under the law, a defendant had to be committed on the sentence received for the conviction serving as the predicate conviction.[7]

Moreover, interpreting the statute to allow the combined elements of separate cases to serve as a predicate conviction was unforeseeable given the Nebraska Supreme Court's prior interpretation of the statute. The court has held that the defendant need not actually serve a year, so long as he was sentenced to a term of not less than one year *and was actually delivered to the prison to serve that sentence.*

> [T]he provisions in § 29-2221(1), namely, that a defendant has been 'committed to prison' on conviction for prior crimes, does not necessitate a showing that the defendant was incarcerated for the entire term of a prior sentence but, rather, requires only that the defendant was delivered into the custody and control of the Nebraska Department of Correctional Services for incarceration according to the rules and regulations of that agency.

*State v. Jackson,* 225 Neb. 843, 408 N.W.2d 720, 733 (1987) (citations omitted). The court has never before indicated that serving time on a separate conviction is sufficient.

The State argues in its brief that the time Davis served for his 1972 conviction is analogous to pretrial detention, and therefore it is foreseeable that this commitment would be used along with the 1973 conviction to create a predicate conviction. Even assuming the time served for the unconstitutional 1972 conviction is analogous to pretrial detention, however, this analogy does not help the State. We have found no cases, and the parties have cited none, in which the Nebraska Supreme Court has treated pretrial detention as a commitment to prison under § 29-2221(1). In fact, the Nebraska Supreme Court, in interpreting the Nebraska Habitual Criminal Offender Act, has disregarded pretrial detention time. Rather, the court has looked strictly at the term of the sentence and the fact that the defendant was committed to the custody and control of the correctional service to serve that sentence "according to the rules and regulations of that agency." *Jackson,* 408 N.W.2d at 733; *see also State v. Wyatt,* 234 Neb. 349, 451 N.W.2d 84 (1990).[8]

In addition, we believe that, without clear notice or warning, a person should be able to rely on the fact that a prior conviction was set aside as constitutionally invalid.[9] It seems to defeat at least part of the purpose of setting aside unconstitutional convictions if the defendant must not only face reprosecution but also be subject to an enhanced sentence resulting from the earlier, invalid, conviction.

We conclude, for the above reasons, that the state court's interpretation of § 29-2221(1) allowing the State to combine the conviction and sentence in Davis' 1973 conviction and the commitment to prison in the 1972 case was an unforeseeable departure from precedent. As a result, it not only

---

7. The states attorney's testimony at the habeas hearing was as follows:

 A. They, as I understand Nebraska law, currently, there have to be two prior convictions for a felony resulting in a sentence of at least one year in, if it is a state case, in the penal complex ... and in federal court, a conviction for a felony with a sentence of a year or more.

 Q. And they have to actually be committed to a prison for that sentence, is that correct?

 A. They have to be received on that sentence.

 Q. Uh, according—

A. The [sic] don't have to do a year of actual time. They have to get the sentence and start it out....

Tr. at 66.

8. We note that a pretrial detainee is not in the custody and control of the prison system, but is instead in the custody and control of the courts. Therefore, pretrial detention does not meet the standard set in *Jackson.*

9. We express no opinion as to whether such a use, with fair notice, would be constitutional.

significantly increased the punishment Davis received for his crime, it also deprived him of the defense that he did not have the two requisite predicate convictions under § 29–2221(1). Accordingly, we conclude that, under *Bouie*, 378 U.S. 347, 84 S.Ct. 1697, to apply this new interpretation retroactively to Davis violates the due process clause of the Fourteenth Amendment.

### IV.

In conclusion, we find that the state court's interpretation of § 29–2221(1) was unforeseeable, and thus the court's retroactive application of that interpretation to Davis violated the due process clause of the Fourteenth Amendment. Therefore, we reverse and remand to the district court for action consistent with this opinion.