Loris **QUINN**, Petitioner,

v.

Robert **DOOLEY**, Warden, South Dakota State Penitentiary, Respondent.

No. CIV. 02–1032.

United States District Court, D. South Dakota, Northern Division.

July 7, 2003.

---

Plaintiff was Pro Se.

Sherri Sundem Wald, Assistant Attorney General, Pierre, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION AND ORDER OF DISMISSAL

KORNMANN, District Judge.

The Court submitted the above-entitled matter to U.S. Magistrate Judge Mark A. Moreno and the magistrate judge submitted his report and recommendation to the Court on June 13, 2003, Doc. 13. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636 and petitioner has filed no written objections thereto.

The Court has reviewed the file and finds that the report and recommendation of the magistrate judge should be accepted and the case dismissed.

Now, therefore,

IT IS ORDERED:

1. The report and recommendation of the U.S. Magistrate Judge filed June 13, 2003, Doc. 13, shall be and is hereby adopted as the findings of fact and conclusions of law herein.

2. The petition for writ of habeas corpus is dismissed with prejudice.

## REPORT AND RECOMMENDATION FOR DISPOSITION OF HABEAS CORPUS PETITION

MARK, United States Magistrate Judge.

[¶ 1] The above-captioned matter was referred to this Court by the District Court [1] pursuant to 28 U.S.C. 636(b)(1)(B) for the purpose of appointing counsel, conducting any necessary hearings, including evidentiary hearings, and submitting to it proposed findings of fact and recommendations for disposition of the matter.

[¶ 2] After careful review of the records on file, including the state court filings and transcripts in Roberts County Crim. Nos. 00–344 and 01–053, and based on the totality of the circumstances present, the Court does now make and propose the following findings of fact, report and recommendation for disposition in accordance with the District Court's referral Order.

[¶ 3] For convenience, Petitioner, Loris Quinn, will be referred to herein as "Quinn" and Respondent, Robert Dooley, will be referred to as "State".

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

## I.

[¶ 4] Quinn pled guilty to the offense of escape in Roberts County state court and was sentenced on October 30, 2000 to five years of imprisonment, with two years suspended. He did not appeal his conviction to the South Dakota Supreme Court, but did file a petition for habeas relief in state court, which was denied.

[¶ 5] On October 29, 2001, Quinn filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his trial counsel was ineffective in advising him to plead guilty and in failing to investigate whether his conduct fit within the elements of the escape offense. In his petition, he claimed that the reason he did not appeal the denial of his state court petition to the South Dakota Supreme Court was because he was unable to meet the relevant deadline. Ultimately, his § 2254 petition was dismissed without prejudice for failure to exhaust state court remedies.

[¶ 6] On September 18, 2002, Quinn filed a second § 2254 petition, again contending that his trial counsel was ineffective for urging him to enter a guilty plea when his actions did not factually amount to the crime of escape. He maintained in his second petition that he did not appeal the state court's denial of habeas relief because his habeas counsel did not inform him in a timely manner that he had the right to do so.

[¶ 7] The District Court found that Quinn had procedurally defaulted his claims by not presenting them to the state's court of last resort and that Quinn

had not shown cause and prejudice to excuse his default.[2] The Court, however, found that Quinn's second petition did, somewhat inartfully, allege actual innocence which could lift the procedural default. Being unable to find from the face of the petition that summary dismissal was warranted, the Court accordingly required that the State serve and file an answer and supporting memorandum. The State thereafter filed its answer and a brief in support of its request that Quinn's second petition be denied. Quinn then wrote a letter to the District Court requesting that counsel be appointed for him and seeking guidance as to what he should do.

## II.

[¶ 8] In September, 2000, Quinn was a prisoner in the Roberts County jail, serving out a misdemeanor sentence and a sentence imposed for an unpaid fine. On September 7, 2000, he requested and was granted a furlough from jail to attend and be a pallbearer at his cousin's funeral. While no exact time was given to him, Quinn was expected to be back at the jail following the funeral service and subsequent meal.[3] Quinn left the jail and participated in some of the wake service and grave preparation duties, but began consuming alcoholic beverages and failed to attend the final church service and burial because he was intoxicated. By his own admission, Quinn was not able to resist the temptation of alcohol that was offered to him:

---

**2.** The Court's finding is premised on the well established legal proposition that errors made by habeas counsel are not actionable as "cause" to excuse procedural defaults for purposes of § 2254. *See Chambers v. Bowersox*, 157 F.3d 560, 566 n. 6 (8th Cir.1998), *cert. denied*, 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *Clemmons v. Delo*, 124 F.3d 944, 947 (8th Cir.1997), *cert. denied*,

523 U.S. 1088, 118 S.Ct. 1548, 140 L.Ed.2d 695 (1998).

**3.** *Roberts County Sheriff Neil Long*, who authorized the furlough, expected that Quinn would be back on September 7th and communicated his expectations to Quinn. Habeas Corpus (H.C.) Tr. 28, 37–38. Long also told Quinn not to consume any alcoholic beverages while out on furlough. H.C. Tr. 31–32.

... I went to the funeral and while I was up there I thought I was strong enough and confident in myself enough to turn down alcohol, but with me being in jail, my cousin who I grew up with that got killed and everything, the only way that I knew how to handle that problem at that time was run to the bottle. And when some relatives were up there they had a bottle so I ran to the bottle instead. *I should have just came back like I was supposed to, like I was going to,* but at that time I didn't think—I thought I could handle the situation.

Arr. Tr. 17 (emphasis added). Quinn failed to return to the jail of his own volition. He described what happened this way:

When I did leave and did drink *I was told by the tribal police to come back and I told them I was going to.* I started walking back down here to Sisseton and nobody would pick me up, *so I used it as an excuse and went and got drunk.* When I came to I was in Eden and didn't know what happened or anything else. And I come crawling out of the field and sat up there on the—by the highway. I passed out again and the next thing I know the cops came and picked me up and took me to jail.

Arr. Tr. 18 (emphasis added). Quinn was later arrested and detained in Marshall County two days after being released on the funeral furlough. It was not until 2:00 p.m. on September 14, 2000 that Quinn finally returned to the jail.

[¶ 9] Quinn was charged with escape and counsel was appointed to represent him. Quinn admitted to his counsel that he had consumed alcohol and failed to return to the jail. Counsel believed that Quinn's voluntary intoxication would not provide a viable defense to the escape

charge.[4] Based on this advice, Quinn pled guilty to the charge on October 12, 2000. During his allocution, Quinn apologized to the trial court, the prosecutor and Long for his actions and "for not coming back when I was supposed to." Arr. Tr. 18. The trial court found that Quinn's plea was a knowing, voluntary and intelligent one and that a factual basis existed for the same. On October 30, 2000, Quinn was sentenced to a term of imprisonment at the state penitentiary.

## III.

[¶ 10] Quinn has requested that he be appointed counsel, presumably under the Criminal Justice Act, 18 U.S.C. § 3006A, to assist him with his § 2254 petition.

[¶ 11] Initially, it must be observed that there is no constitutional right to counsel in habeas actions. *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *Hoggard v. Purkett,* 29 F.3d 469, 471 (8th Cir.1994). A habeas corpus proceeding is civil in nature and "the Sixth Amendment's right to counsel afforded for criminal proceedings does not apply." *Hoggard,* 29 F.3d at 471 (quoting *Boyd v. Groose,* 4 F.3d 669, 671 (8th Cir.1993)).

[¶ 12] A court, however, may appoint counsel for a prisoner seeking habeas relief "when the interests of justice so require." § 3006A(a)(2)(B); *see also Hoggard,* 29 F.3d at 471. If the court decides to hold an evidentiary hearing, the interests of justice require that counsel be appointed. *Hoggard,* 29 F.3d at 471. Rule 8(c) of the Rules Governing § 2254 Cases ("Habeas Rules"). If no evidentiary hearing is necessary, the appointment of counsel is discretionary. *Hoggard,* 29 F.3d at 471.

---

**4.** Escape is a general intent crime and, as counsel noted in his testimony, "[v]oluntary intoxication is not a defense to this crime." H.C. Tr. 47; *see also id.* at 51–52.

[¶ 13] In exercising its discretion, a court should first determine whether a *pro se* habeas prisoner has presented a non-frivolous claim. *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir.), *cert. denied*, 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the prisoner has presented only claims that are frivolous or are clearly without merit, the court should dismiss the case on the merits without appointing counsel. *Id.;* Rule 4 of the Habeas Rules. If the prisoner has presented a non-frivolous claim, the court should then determine, whether given the particular circumstances of the case, the appointment of counsel would benefit the prisoner and the court to such an extent that "the interests of justice so require" it. *Nachtigall*, 48 F.3d at 1081; *Abdullah*, 18 F.3d at 573. In determining whether the appointment of counsel is required for a prisoner seeking habeas relief with non-frivolous claims, the court should consider the factual and legal complexities of the case, the prisoner's ability to investigate and present claims, the existence of conflicting testimony, and any other relevant factors. *Nachtigall*, 48 F.3d at 1081–82; *Hoggard*, 29 F.3d at 471; *Abdullah*, 18 F.3d at 573.

[¶ 14] Applying these factors to the case at hand, this Court concludes that the interests of justice do not require the appointment of counsel. The claims Quinn raises in his second petition, while not frivolous or plainly devoid of any colorable merit on their face, *see Bouie v. City of Columbia*, 378 U.S. 347, 349–63, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Davis v. Nebraska*, 958 F.2d 831, 833–36 (8th Cir. 1992); *Moore v. Wyrick*, 766 F.2d 1253, 1254–61 (8th Cir.1985), *cert. denied*, 475 U.S. 1032, 106 S.Ct. 1242, 89 L.Ed.2d 350 (1986), nonetheless, are not ones that involve complex legal or factual issues or ones that arise out of conflicted testimony or require further fact investigation. He presents his claims with brevity and clarity so as to enable the Court to know exactly what it is being called upon to decide and whether habeas relief is warranted. *See Nachtigall*, 48 F.3d at 1082. Finally, Quinn's claims can easily be resolved on the basis of the state court record. *Hoggard*, 29 F.3d at 472. The Court therefore finds it unnecessary to appoint counsel for Quinn and declines to do so.

## IV.

[¶ 15] In the referral Order, the Court was implicitly directed to determine whether an evidentiary hearing was required on Quinn's second petition. Quinn has not requested an evidentiary hearing or in any way suggested that such a hearing is necessary before his petition can be properly disposed of. Even so, the Court is duty bound under Rule 8 of the Habeas Rules, to decide if an evidentiary hearing is mandated or otherwise should be held.

[¶ 16] Under applicable law and the rules promulgated thereunder, evidentiary hearings are not required if:

1. The petition alleges facts that, if proved, do not entitle the prisoner to habeas relief; or

2. The petitioner's fact-based claims were previously the subject of a full and fair hearing in state court and resulted in fact findings that resolved all of the controlling fact issues in the case.

*See generally* 1 R. Hertz & J. Liebman, *Federal Habeas Corpus Practice and Procedure*, §§ 20.1b, 20.2–20.4 (4th ed.2001).

[¶ 17] This Court has scrutinized Quinn's second petition and both his claims in light of the criteria/standards imposed by applicable statutory and case law and the Habeas Rules, *see* 28 U.S.C. § 2254(e)(2); Advisory Committee Note to Rule 8 of the Habeas Rules; *Townsend v. Sain*, 372 U.S. 293, 313–22, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Keeney v. Tamayo–*

*Reyes,* 504 U.S. 1, 5–13, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and concludes that an evidentiary hearing is not obligatory or necessary in this instance. As such, no evidentiary hearing shall be held and the Court shall proceed to recommend "such disposition of the petition as [it believes] justice ... require[s]." Rule 8(a) of the Habeas Rules.

### V.

[¶ 18] Both federal law and § 2254's procedural rules require that a petition be signed under penalty of perjury by a petitioner or, at a minimum, someone acting in his behalf. 28 U.S.C. § 2242; Rule 2(c) of the Habeas Rules. In the event the petitioner fails to comply with this requirement, a court may dismiss the petition. *See Hendricks v. Vasquez,* 908 F.2d 490, 491 (9th Cir.1990) (a court may dismiss an unsigned and unverified petition).

[¶ 19] The petition Quinn mailed, that was later filed, was not signed by him under penalty of perjury or, for that matter, even signed (or dated) at all. The instructions to the form petition Quinn used, which he was admonished to "Read Carefully", state in pertinent part that [t]his petition must be ... signed by the petitioner under penalty of perjury and warn him that "[a]ny false statement of a material fact" could result in him being prosecuted and convicted of perjury. *See* (1) of Instructions to Petition for Writ of Habeas Corpus by a Person in State Custody (found in the Appendix of Forms to the Habeas Rules). In addition, Quinn's second petition fails to include a statement of the relief requested in conformance with Rule 2(c) of the Habeas Rules. In fact, Quinn never even bothered to submit the last page, containing additional questions, a prayer for relief statement and the under oath perjury declaration, with his submissions to the Clerk.

[¶ 20] These circumstances could arguably justify a dismissal of Quinn's second petition without prejudice. Yet given the history of this case, the amount of time that has passed since his petition was filed and Quinn's *pro se* status, dismissing the petition or returning it pursuant to Rule 2(e) of the Habeas Rules is neither called for nor justified. The defects noted appear to be an oversight and do not deprive this Court of jurisdiction. *Hendricks,* 908 F.2d at 491. They are thus defects that the Court, if it sees fit, may disregard. *Id.; see also Lucky v. Calderon,* 86 F.3d 923, 925 (9th Cir.1996). Quinn's claims track those that he made, under oath, to the state habeas court and in his initial federal petition. The statements and responses Quinn makes in his second petition are supported by the record and are not perjurious. Moreover, despite the lack of a prayer for relief, the Court is not left to wonder or speculate as to the relief being sought. The Court will therefore proceed to address whether Quinn has established that the failure to consider his claims will result in a fundamental miscarriage of justice so as to excuse the procedural default that occurred by reason of him not appealing his state habeas case to the South Dakota Supreme Court.

### VI.

[¶ 21] A petitioner is barred from raising a procedurally defaulted claim as a basis for § 2254 relief unless he can "excuse" the default by (1) "demonstrat[ing] ... cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) showing that the case falls within the category of cases that the Supreme Court has characterized as "fundamental miscarriages of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485–97, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986);

*see generally* Hertz & Liebman, §§ 26.1, 26.3, 26.4. Inasmuch as the District Court has already determined that Quinn has not alleged grounds sufficient to constitute cause and prejudice, this Court, in accordance with the District Court's directive, will focus on whether the "miscarriage of justice" exception to the procedural default rule applies here.

[¶ 22] The Supreme Court has thus far not provided a definitive interpretation of the phrase "miscarriage of justice." The Court, however, has made it clear that the "miscarriage of justice" exception extends to cases of "actual innocence," *Schlup v. Delo*, 513 U.S. 298, 324–26 & n. 42, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), which, in the non-capital case context, the Court has defined as situations where the constitutional violation "has probably resulted in the conviction of one who is actually innocent [of the convicted offense]." *Murray*, 477 U.S. at 496, 106 S.Ct. 2639; *see also Schlup*, 513 U.S. at 325, 327–28, 115 S.Ct. 851 (constitutional violation "probably has caused the conviction of one innocent of the crime" or "has probably resulted in the conviction of one who is actually innocent"). In *Schlup*, the Supreme Court refined the "probable innocence" standard announced nine years earlier in *Murray*. In doing so, the Court emphasized that the standard is less stringent than the standards that apply when a petitioner contends that the evidence presented was constitutionally insufficient to convict him. *Schlup*, 513 U.S. at 330, 115 S.Ct. 851. According to the Court, "probable innocence" can be demonstrated if the petitioner presents "new facts [that] raise[ ] sufficient doubt about [his] guilt to undermine the confidence in the result of the trial...." *Id.* at 317, 115 S.Ct. 851. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would

have convicted him in light of the new evidence." *Id.* at 327, 115 S.Ct. 851; *see also Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The same standard applies in cases where the petitioner has pled guilty and not gone to trial. *Bousley*, 523 U.S. at 623–24, 118 S.Ct. 1604; *see also United States v. Apker*, 174 F.3d 934, 938–41 (8th Cir.1999); *United States v. Jones*, 172 F.3d 381, 384–85 (5th Cir.1999) (*per curiam*).

[¶ 23] Whether Quinn is "actually innocent" of the escape offense he pled guilty to, and therefore entitled to have his claims reviewed, is dependent upon the predicate issue of whether an escape actually occurred under state law. If the elements of the escape charge he was found guilty of were not all met, Quinn would be "actually innocent" of the offense he was incarcerated for and thus able to overcome his procedural default. If, on the other hand, Quinn's guilty plea and conviction are factually and legally sustainable, his procedural default cannot be excused and his second petition must be dismissed.

[¶ 24] SDCL 22–11A–2 provides that "any prisoner who escapes" is guilty of a felony. "Escape" is defined in pertinent part, as a "departure without lawful authority or failure to return to custody following a temporary leave granted for a specific purpose or limited period." SDCL 22–11A–1. "Prisoner ... includes every person who is in custody by being under arrest or by being under process of law issued from a court of competent jurisdiction." *Id.; see also State v. Karp*, 527 N.W.2d 912, 913–14 (S.D.1995). Under South Dakota law, prisoners need not be "in a place designated for the keeping of a prisoner" to be guilty of escape. SDCL 22–11A–1.

[¶ 25] Quinn does not dispute that he was a "prisoner" at the time he was re-

leased from the Roberts County jail. Instead, he argues that because he was never given a definite deadline to return to the jail in connection with his funeral furlough, he could not lawfully be convicted of escape.

[¶ 26] The state habeas court held that as soon as Quinn began drinking alcoholic beverages and left the funeral services, he violated the terms of his furlough. He thus was required to immediately return to the jail and when he failed to do so, the offense of escape was committed. According to the habeas court, because Quinn actually admitted to committing the offense for which he was charged, his trial counsel did not render ineffective assistance of counsel by recommending or encouraging Quinn to plead guilty to the escape offense.

[¶ 27] Quinn was given a furlough for the "specific purpose" of attending his cousin's funeral and the meal held thereafter. While it is true that Quinn was not provided with a set time to return to the jail[5], there can be little doubt that he was temporarily released for a "specific purpose." He was clearly not given permission to consume alcohol, much less become intoxicated, or skip the final church service and burial and return days later.

[¶ 28] The fact that Quinn was arrested and jailed in another county before he could return to the Roberts County jail does not vitiate his escape conviction or establish the requisite "actual innocence" to excuse his procedural default. The state habeas court found that Quinn was arrested and detained by Marshall County authorities "a couple of days" after he was granted the funeral furlough, long after he had violated the purpose of his temporary leave and had committed the escape crime.

[¶ 29] After entering his guilty plea, Quinn apologized for "running" from Long and admitted that he did not come back when he was "supposed to." He also did not object to the factual basis statement that was provided by the prosecutor.[6] Finally, Quinn indicated that he was satisfied with the legal representation provided to him by his trial counsel.

[¶ 30] Despite the fact that Quinn was not given a specific time or date to return from the funeral, he was nonetheless prop-

---

5. Quinn, however, was aware of what Long's expectations were regarding the length of the furlough, because they had been personally communicated to him by Long, and thus knew, or at least should have known, that the furlough was of limited duration and that he was due back at the jail that same night or at least by the next day.

6. The record indicates that the following exchange occurred immediately after Quinn pled guilty to the escape charge:

THE COURT: Is there a factual basis that can be provided?

[THE PROSECUTOR]: Well, your Honor, Mr. Quinn was allowed to leave for a relative's funeral on furlough from the jail and he didn't return and was picked up in Marshall County. I believe he was passed out in a ditch over there somewhere.

THE DEFENDANT: (Nodding head).

THE COURT: Do you have any disagreement with that information?

THE DEFENDANT: No.

THE COURT: And I guess do your records indicate, Mr. Cameron [the prosecutor] what period of time elapsed between when he was released on the furlough and when he was found in the ditch?

[THE PROSECUTOR]: Do we know right off hand, Neil [Long, the Roberts County Sheriff]?

[LONG]: No, I don't. It was several days.

[DEFENSE COUNSEL]: It was a couple of days.

THE COURT: And what were you in jail for?

THE DEFENDANT: My charge before that?

THE COURT: Right.

THE DEFENDANT: It was for my second DWI.

Arr. Tr. 14–15.

erly convicted of escape. The statutory language of the escape offense includes the act of failing to return to custody following a temporary leave granted for a "specific purpose" *or* a limited time period. The statute therefore allows for a prisoner to be convicted of escape if he (1) fails to return to custody after violating a "specific purpose" of a temporary leave or furlough granted to him *or* (2) fails to return within the allotted time period. Quinn's conduct fell within the former rather than the latter category and constituted an escape. The fact that the Legislature considered an inmate to have escaped if he failed to report to or return from a temporary leave granted to him for a "specific purpose", such as employment or vocational training, *see* SDCL 24–8–6, serves to buttress this Court's conclusion that Quinn was properly convicted of escape.

[¶ 31] The South Dakota Supreme Court's decision in *State v. Kiggins,* 86 S.D. 612, 200 N.W.2d 243 (1972) is instructive and likewise supports the Court's view that Quinn's escape conviction was lawful under state law. In *Kiggins* a defendant was sentenced to serve a term of three months in the county jail. With the approval of the sentencing judge, the defendant was granted work release privileges and ordered to continue his employment at a local auto salvage yard. The defendant was released from jail about 7:00 each morning and directed to return at 4:15 in the afternoon. He was responsible for getting to and from his place of employment and at no time was ever accompanied by a guard or jailer. At first, the defendant honored the work release privilege and returned to jail at the appointed time. Then, one morning after being released, he failed to return. Several months later, he was apprehended in another state and returned to South Dakota. 86 S.D. at 613–14, 200 N.W.2d at 243–44.

[¶ 32] In affirming the escape conviction, the South Dakota Supreme Court made several important observations. First, the Court made clear that "[i]n order to be guilty of an escape, a prisoner need not break doors or walls; he escapes if he removes himself from the imposed restraint over his person and volition." 86 S.D. at 614, 200 N.W.2d at 244. Second, the Court pointed out that "[a] general intent not to return to the place of confinement is all that is required" for a prisoner on work release to be guilty of escape. *Id.* Finally, the Court emphasized that "until his discharge by due process of law" [the defendant] remain[s] under the legal restraint of his sentence and in constructive custody of the jail and any "willful abscondment from restraint and custody constitute[s] an escape." 86 S.D. at 615, 200 N.W.2d at 244.

[¶ 33] In the case at hand, Quinn succumbed to his own thirst for alcohol, leaving the church service and not partaking in the rest of the funeral so that he could drink, and eventually get drunk, with his friends. By engaging in this conduct and not immediately returning to the jail, when he knew he was "supposed to", Quinn violated the "specific purpose" of his furlough and committed the crime of escape.

## VII.

[¶ 34] The state court concluded that Quinn's trial counsel was not constitutionally ineffective because counsel's performance was not deficient and did not prejudice Quinn to the extent he was deprived of a fair trial. Based on the facts presented and applicable state statutory and case law governing escapes, the habeas court's decision was the correct one. *See Taylor v. Bowersox,* No. 01–2735, 2003 WL 21012322 at *7 (8th Cir. May 7, 2003). Moreover, the court's factual findings are well supported by the record, are pre-

sumed to be correct, and have not been rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

[¶ 35] In any event, the state habeas court's adjudication of Quinn's claims did not result in a decision that was contrary to or result in an unreasonable application of, clearly established federal law, as determined by the Supreme Court.[7] 28 U.S.C. § 2254(d)(1). Nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Under the AEDPA, this Court must give substantial deference to a state court's legal conclusions. The Court may not grant a petition for a writ of habeas corpus unless the relevant state court decision is both wrong and unreasonable.

[¶ 36] Here, the Court cannot say that the state court's application of the standard for reviewing ineffective assistance of counsel claims, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny, was erroneous or unreasonable. The Court therefore concludes, as it must, that the state court properly denied habeas relief and that Quinn's second petition should likewise be denied.

## VIII.

[¶ 37] Having thoroughly considered both of Quinn's claims, this Court finds no

grounds for habeas relief. There was both a factual and legal basis for Quinn to plead guilty to and be convicted of the state escape charge. This being the case, the performance of Quinn's trial counsel was neither constitutionally deficient nor prejudicial so as to entitle him to relief under § 2254.

[¶ 38] Accordingly, based on the foregoing findings, conclusions and discussion, the Court hereby recommends that Quinn's second petition under § 2254 for a writ of habeas corpus, Docket No. 1, be denied and that judgment be entered forthwith dismissing the petition in its entirety and with prejudice.

## NOTICE

**Failure to file written objections to the within and foregoing Report and Recommendations for Disposition within ten (10) days from the date of service shall bar an aggrieved party from attacking such Report and Recommendations before the assigned United States District Judge.** *See* **28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).**

June 12, 2003.

---

7. The Antiterrorism and Effective Death Penalty Act's (AEDPA) "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue a writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court may have done on a set of materially indistinguishable facts. The federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of a particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (discussing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); *see also Sexton v. Kemna*, 278 F.3d 808, 811 (8th Cir.) (analyzing *Williams* ), *cert. denied*, —— U.S. ——, 123 S.Ct. 129, 154 L.Ed.2d 145 (2002).